## HENRY v. DIVINEY *et al., Appellants.*

1. **Evidence:** LOST INSTRUMENTS: FOUNDATION FOR SECONDARY PROOF. Where a daughter of plaintiff testified that she attended to her father's business, that a letter claimed to be lost was last in her possession and that she had looked for it recently before the trial in the places where it would probably be found, and did not find it, such evidence is *prima facie* sufficient to show the loss of the letter and to lay the foundation for the admission of secondary evidence of its contents.

2. ———— : ———— : ————. The sufficiency of the proof of the loss or destruction of a written instrument, in order to permit secondary evidence of its contents, rests largely in the discretion of the trial court.

3. **Limitation:** PART PAYMENT ON A NOTE. Proof of actual payment on a note is sufficient to except it from the bar of the statute of limitations. It is not necessary to show that the credit was indorsed on the note.

4. **Civil Practice:** FILING AFFIDAVITS OUT OF TIME. Permitting affidavits in support of a motion to be filed out of time rests largely in the discretion of the trial court, and its action in refusing such permission will not be reviewed unless it is shown that such discretion was abused.

*Appeal from Bates Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED.

*Thos. J. Smith* and *Wm. Page* for appellants.

*Francisco & Rose, J. S. Francisco* and *Parkinson & Graves* for respondent.

(1) The loss of the letter written from Kansas City was proved by its custodian, the proper party. (2) The admission of secondary evidence is discretionary with the trial court, and its discretion will not be

Henry v. Diviney.

interfered with, unless it clearly appears that it was abused. *Christy v. Kavanaugh*, 45 Mo. 375; *McCorey v. Wallace*, 22 Mo. App. 377. (3) The custodian of a lost letter must swear to its loss, or search must be made for it where it was last known to be, and plaintiff is not required to swear that he has it not, unless there is evidence that it was last in his possession. *Meyers v. Russell*, 52 Mo. 26; *Mfg. Co. v. Dickson*, 70 Mo. 272; *Strain v. Murphy*, 49 Mo. 337; 1 Wharton on Evidence [2 Ed.] sec. 147, p. 140. (4) To exclude evidence of the contents of a lost paper on the ground that it was destroyed, it must appear that it was destroyed wilfully and deliberately by the plaintiff or by his direction. *The Count Joannes v. Bennett*, 5 Allen, 169; 81 Am. Dec. 738; *Blade v. Noland*, 12 Wend. 173; *Meyers v. Russell*, 52 Mo. 26. (5) The payment on the note could be proved by any competent evidence, and indorsement of it on the note was not necessary, so that instructions one and three given for plaintiff properly declared the law. Angell on Limitations [3 Ed.] sec. 244, p. 311. (6) To entitle the defendants to a new trial on the ground of newly-discovered evidence, the affidavits of the witnesses who are expected to swear to the new facts must be filed, or their absence accounted for; neither of which was done by defendants. There is no statement in defendants' affidavit for a new trial that the verdict was unjust or that the defendants had merits. *Culbertson v. Hill*, 87 Mo. 553. (7) The affidavit of Thomas J. Smith, claiming diligence, was offered entirely too late to be considered by the court. (8) Such affidavit conclusively shows that want of diligence which in its absence would be conclusively presumed.

RAY, C. J.—This is an action founded on a promissory note executed by defendants' testator, Antony Henry, deceased, to the plaintiff, Bryan Henry, his father. The note is an ordinary promissory note for one

thousand dollars, dated January 1, 1869, and due one day after date. On said note is an indorsement as follows: "Paid November 6, 1882, twenty-five dollars." The note was first presented to the defendants, the executors of said Antony Henry, deceased, and to the probate court of Bates county, Missouri, for allowance; the attorney of said Bryan Henry having been elected judge of the probate court, before the said cause was heard in said court, the same was certified to the circuit court, where the case was tried. There were no pleadings and the defense was the statute of limitations.

The body of the note and signature thereto, as was admitted by defendants at the trial, were in the handwriting of said Antony Henry, deceased, but as the note bore date January 1, 1869, and was due one day after its date, it was barred by operation of the statute of limitations unless taken out of the statute by reason of said payment of twenty-five dollars thereon, on the sixth of November, 1882. The controversy, therefore, was over this payment and indorsement on the note, and is presented in this court on exceptions to evidence in that behalf admitted on the part of plaintiff, and to instructions given at his instance, and to certain rulings in respect to the application and motion for new trial, which will be taken up in appropriate order hereafter.

When plaintiff offered to read the note with its said indorsement thereon in evidence, it was excluded upon defendants' objection until proof of the indorsement was made. Plaintiff then introduced Miss Minnie Henry, daughter of plaintiff and sister to Antony Henry, deceased, maker of said note. The note was shown her and she testified as follows: "I know of the indorsement of the twenty-five dollars on it; was present in my mother's room at our mother's home in Lewiston, Illinois. My father, brother Will and cousin Tom Lally were present. The money was received in a draft on National Bank. The indorsement was placed on the note by direction of my father, Bryan Henry, at the

time the money was received and at the date it purports to have been done. Cousin Tom was present when the letter and draft was received; father called to one of the boys to indorse the amount of the draft on the note and I think cousin Tom did it; it is in his handwriting, I think. The draft came in a letter written and sent from Butler by my brother, A. Henry, to my father; the draft was twenty-five dollars. I was at home and brother Will lived at father's until he came to Butler. He was there. This is the letter the draft came in."

Plaintiff here offered and read in evidence without objection as follows :

"A. HENRY, Attorney at Law.

"BUTLER, Mo., November 3, 1882.

"I wrote you last Monday from Kansas City. , I suppose you got it. Harry is not well yet, but has improved some. I send you inclosed twenty-five dollars, and when you need let me know. I will, sometime between this and Christmas, come to see you all. I I hope mother will take some care of herself and get better. There is nothing new I can state.

"ANTONY."

Witness continued : "Brother Antony wrote father a letter from Kansas City a few days before we received the letter containing the draft."

Counsel for plaintiff then asked witness to state contents of the Kansas City letter. Defendants objected until said letter was accounted for. Witness thereupon stated she had searched for the letter of A. Henry's from Kansas City, and cannot find it. "I live at home with my father; my mother is dead; she was for many years an invalid; I was in charge of the house; did all the business in caring for my parents; when this letter came to father I took charge of it. Before coming to the trial I searched the house for it. Sometime ago I destroyed a good many letters and suppose this must have been one of them as I can find it nowhere."

Counsel for defendants here interposed further objection that Miss Henry is not competent to prove by herself her custody of said letter as agent, and the further objection that the evidence as to the loss is not sufficient to admit parol testimony as to contents, but Bryan Henry, the claimant, must himself testify as to its loss, all of which objections the court then and there overruled, and defendants then and there excepted.

Witness then testified: "A few days before this letter with the draft in it came, father received a letter from Kansas City, Missouri, from my brother, A. Henry, in which he said he would send father twenty-five dollars, to be applied as interest on this note."

Counsel for plaintiff further asked: "Did you ever hear a conversation between your father and A. Henry, about this note? A. Heard nothing particular about this note, in their conversation in 1883, but I had a conversation with my brother, A. Henry, in 1884, when he was on his way to the National Democratic Convention at Chicago, that nominated Grover Cleveland. He often spoke to me about his business at this time; he said he had about seventy-five thousand dollars' worth of property and was some in debt. He alluded to the twenty-five-dollar payment; he said he would have paid this interest sooner but there was no necessity for it."

CROSS-EXAMINATION.

"I had frequent correspondence with my brother, A. Henry. I generally attended to the correspondence of the family with him.

"Q. Were the two letters referred to in your examination addressed to your father? A. They were, and I read them after he died. I had the letter in reference to the payment of interest from Kansas City; it has been lost; I have searched for it and cannot find it. I have no idea where the envelope for the one written November 5, 1882, is; I don't remember when I saw the

envelope last ; my recollection is that the envelope was one with his attorney's card on it, with directions to return if not called for. I sometimes kept letters in a drawer in my mother's room, sometimes in my own room. The drawers were not locked in our house. The draft for twenty-five dollars was made payable to M. B. Henry, or order. M. B. Henry is my name ; I was to draw the money on it. I usually attended to business for my father."

Defendants' counsel at the close of the testimony asked the court to withdraw from the jury her evidence in regard to the contents of the letter from Kansas City, because she had not sufficiently accounted for its absence, which request the court refused and defendants excepted. It may be further observed that this witness further stated that her father was eighty years old, lived in Illinois and was unable to attend the trial, and that at the time of said indorsement her mother was an invalid and had since died, as had also her said brother Will and the said cousin Lally, these being the only other persons present at the time the draft was received, and payment indorsed on the note as aforesaid.

The first point for defendants is that plaintiff himself was a competent witness to prove that the letter was not in his possession, that there was nothing to show that it was not in his possession at the time of the trial, except that it was possibly destroyed by the witness Minnie Henry, and that if destroyed by her there is nothing to show that it was innocently done, and that under this state of facts the loss of the letter was not properly accounted for, and, therefore, secondary evidence as to its contents was not admissible. The evidence of the daughter shows that she, and not her father, was the actual custodian of the letter ; she took charge of the letter when received, and testifies that she was in charge of the house and did all the business in caring for her parents ; that she had searched the house for the letter and that she could not find it, and that she supposes it

was among other letters which she destroyed some time ago, etc.

The search was by the daughter, the one last in possession of the letter, and who attended to the business for her father, and in the place or places where it would likely or probably be found, and the search was recent before coming to the trial. The evidence of the witness was, therefore, *prima facie* sufficient to show the loss or destruction of the letter, and to lay the foundation for the admission of secondary evidence as to its contents. *Meyers v. Russell*, 52 Mo. 26 ; Wharton's Ev., sec. 147. There is, we apprehend, nothing in the evidence to indicate that the letter was destroyed by the plaintiff, or by his direction, or that the destruction by the daughter, if it was destroyed, was wilful or with any purpose to suppress or make way with it as a matter of evidence in the cause. Proofs of this sort must necessarily be left largely to the discretion of trial courts, and we see nothing in this behalf calling for our interference.

Instructions one and three given on behalf of plaintiff are assailed as erroneous, in that they direct the jury that if they find that A. Henry, the deceased, did on or about the sixth of November, 1882, make a payment of twenty-five dollars on the note in question, then the note is thereby taken out of the statute, and they will find for plaintiff, without requiring them to first find that the alleged payment had been credited on the note at or about the time payment is claimed to have been made. The material question was as to the alleged payment, and this could be shown by any competent testimony, and proof that credit was actually given by said indorsement on the note was not necessary. If the maker made the alleged payment on the note at the date given this was sufficient to remove the bar of the statute.

The remaining question we will consider is the claim that the trial court should have permitted defendants to

file the affidavit of Thomas J. Smith in support of the motion for new trial. The trial was had June 15. The motion for new trial was filed June 18, with affidavits of said Smith and of the executrix in support of it. The affidavit in question of Smith was offered on the twenty-seventh of June and refused "because it was offered after defendants had announced they had closed their evidence on said motion and had argued the same."

Defendants alleged, as one of the grounds of new trial, that since the trial they had discovered certain named witnesses who would testify that said Thomas Lally died in January, 1882, that is, some eight months prior to the date of said indorsement, and that they had also discovered that the indorsement of said credit of twenty-five dollars was written thereon on or about the eighth day of December, 1885, by one R. P. Paul at request of plaintiff or the said daughter, and that said Paul at the time of the motion lived in Lamar, Colorado.

The affidavit in substance is: "That affiant was engaged in this court after the trial of this cause and was not enabled to go to the state of Illinois, to investigate the facts connected with indorsement of the credit upon the note in suit herein until Saturday June 18, 1887; that he did not and could not reach Ipavia, Illinois, until Sunday evening, the nineteenth of June, 1887, and that he was compelled to leave that point at 7:05 o'clock a. m. on Monday, June 20, 1887, to go to Lewiston, in said state of Illinois, to investigate and look after other material evidence as shown in defendant's application for a new trial.

"Affiant says that after discovering the names of the witnesses and the facts, that could be proven by them at Ipavia, Illinois, and seeing said witnesses, he had no time to write or procure affidavits from them of the facts as alleged in defendants' motion for a new trial, but was compelled to at once go to the depot to meet the train aforesaid, and hardly had time to reach the

depot in time to take said train. Affiant says he went to Lewiston, Illinois, and prosecuted his search for the remaining evidence as rapidly as possible and did not succeed in discovering all of it, until a few moments before eleven o'clock a. m., of that day. Affiant says he was compelled to leave Lewiston for his home by the train leaving there June 20, 1887, at eleven o'clock a. m., and that on that account it was impossible for affiant to write or procure affidavits from the witnesses or any of them proving the facts as set forth in said motion for a new trial.

" Affiant says that defendants have not been able to communicate with the witness Paul, otherwise than by telegram, since discovery of what he will swear as shown by the motion for a new trial, that it is the fact as to his writing the indorsement of credit on the note in suit. Affiant says that if the court will give defendants time to procure the affidavits aforesaid, he believes that he can, in two weeks, procure and file the affidavits of all the witnesses named in said motion for a new trial proving the facts as therein alleged."

The due administration of justice requires, we think, that matters of this sort as to allowing affidavits to be filed out of order, and after parties have closed their evidence and argued their motions, should be left to the discretion of trial judges, and their action upheld unless their discretion is abused, which we do not see is so in the case before us. Besides, it may be doubted if the affidavit, even if admitted, shows the proper diligence under all the circumstances of the case. The note with its said indorsement had, it seems, been on file since the second day of July, 1886. Besides, it looks like the said attorney might have taken time to take the affidavits of one or more of said witnesses, when he was at Ipavia on June 20, or at least have caused some of them to be taken during the week thereafter. The affiant does not claim to have seen the witness Paul, who it is alleged wrote the indorsement of

credit on the note, and the affidavit states that "defend-ants have not been able to communicate with the wit-ness Paul otherwise than by telegram," which perhaps is no more than tantamount to saying that they could communicate by telegraph with the witness, and not that they had in fact done so, and at all events it does not say what the purport of the communication was, if there was any. This exception must, we think, also be ruled against defendants.

We see no error requiring us to interfere with the judgment, and we, therefore, affirm the same in which all concur.