The State v. Murphy.

---

## THE STATE v. MURPHY, *Appellant.*

### Division Two, November 9, 1893.

118    7
122   612
124    10
124   488
118    7
147   37

1. **Supreme Court Practice**: CONTINUANCES: EXCEPTIONS. The supreme court will not review the action of the trial court in refusing a continuance where no exceptions are saved thereto.

2. ———: EVIDENCE. Error cannot be assigned because of the exclusion of a question to a witness where a similar question is subsequently asked and answered.

3. **Practice**: RAPE: EVIDENCE. On a trial for rape the state may introduce in evidence bloody underclothing of the prosecutrix to show the injuries inflicted on her and to corroborate other evidence in the case.

4. ———: ———: ———. Nor was it error to permit a witness who had observed the prosecutrix during the forenoon of the day following the crime to describe her injuries and physical condition.

The State v. Murphy.

5. ———: ———: ———: IDENTIFICATION OF PERSONS. Where a witness is testifying as to the identity of a person, it is competent to permit opposing counsel to produce several persons before him and to ask him to make the identification from them.

6. ———: ORDER OF INTRODUCTION OF EVIDENCE. The order of the introduction of evidence rests largely in the discretion of the trial court, and its action thereon will not be disturbed unless a clear abuse of such discretion is shown.

7. ———: DEFENDANT'S CHARACTER: INSTRUCTION. Where in a criminal case defendant asks no instruction on the question of his character, it is not reversible error for the court to omit to charge on that matter.

8. Criminal Law: RAPE: QUANTUM OF RESISTANCE. A jury upon the trial of one for rape is properly instructed that the prosecutrix was not required to use more force in resisting the assault than she was capable of exerting.

9. ———: INTOXICATION. Voluntary intoxication is no excuse for crime.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

AFFIRMED.

*McDonald & Howe* for appellant.

(1) The court should have granted the continuance as asked by defendant. *Price v. People* (Ill.), 23 N. E. Rep. 639; *Miller v. State*, 45 N. W. Rep. 451; *State v. Butler* 7 S. Rep. (La.) 669; *Sims v. State*, 21 Tex. App. 649. (2) The court erred in refusing to allow appellant's attorney on cross-examination of the prosecutrix to develop the fact that Officer Anton, had induced her to come to St. Louis and institute and carry on the prosecution of appellant on this charge. *State v. Montgomery*, 28 Mo 594; *State v. Brady*, 87 Mo. 142; *State v. Robb*, 90 Mo. 30; Rocoe's Criminal Evidence, sec. 141; *State v. Howard*, 14 S. E. Rep. (S. C.) 487; *People v. Dixon*, 94 Cal. 255; *People v. Thonsen*, 92 Cal. 506; *Geesley v. Railroad*, 32 Mo. App. 413. (3) The court erred in allowing the circuit attorney, over appellant's

objection to re-examine the prosecutrix about some underclothing found at the place where the alleged rape occurred, and to offer same in evidence before the jury. (4) The court erred in allowing the circuit attorney, over appellant's objection, to show the condition of the prosecutrix at a time when she was alleged to have been in the room of one Mrs Louisa Harris, in the month of November, 1892, and in allowing said witness to describe her physical condition. Wharton on Evidence, sec. 259; 21 American and English Encyclopedia of Law, pp. 99, 102. (5) The court erred in permitting the circuit attorney to disguise the prosecutrix and other witnesses before presenting them to the witness for the defense to be by them identified—and in refusing to call them forth into the presence of the court and jury for the purpose of identification until the circuit attorney had time to disguise them, and until he was permitted to first cross-examine the witnesses. (6) The court erred in permitting the circuit attorney to call Officer Anton after the case had been closed on both sides, against appellant's objection, and in allowing said officer to testify that "when arrested appellant's pants were open and he had his penis in his hand." *Craighead v. Wells*, 21 Mo. 404; *Babcock v. Babcock*, 46 Mo. 243. (7) The court erred in refusing to give an instruction touching the appellant's good character and reputation. Revised Statutes, 1889, sec. 4208; *State v. Mathews*, 20 Mo. 55; *State v. Hardy*, 7 Mo. 607; *United States v. Means*, 42 Fed. Rep. 599; *Jackson v. State*, 51 N. W. Rep. (Wis.) 89; *State v. Palmer*, 88 Mo. 568; *State v. Banks*, 73 Mo. 592; *State v. Branstetter*, 65 Mo. 149. (8) The court erred in declaring the law of the case to the jury in instruction number 4. *State v. Perkins*, 11 Mo. App. 82; *State v. Cunningham*, 100 Mo. 382. (9) The court erred in giving instruction number 5.

*R. F. Walker*, Attorney General, *Morton Jourdan*, assistant, and *C. O. Bishop* for the state.

(1) The first error suggested in the motion for a new trial is the overruling of the application for a continuance. There was no exception saved to the action of the court. *State v. Stevenson*, 93 Mo. 91. (2) The motion also suggests error in the empaneling of the jury, permitting prejudiced persons to be selected over appellant's objection; also, improper conduct of the circuit attorney in his closing argument; also, misconduct of the jury. There is nothing in the record to sustain these suggestions of error. Allegations made in a motion for a new trial are not self-probative. *State v. Hultz*, 106 Mo. 41. (3) The seventh suggestion of error, that the court erred in admitting evidence offered by the prosecution against the objection of appellant, is not well made. *State v. Adams*, 108 Mo. 208; *State v. Porter*, 26 Mo. 201; *State v. Parker*, 106 Mo. 217. (4) The court did not err in excluding evidence offered by defendant. *State v. Douglass*, 81 Mo. 234; *State, etc., v. Leland*, 82 Mo. 231. (5) The instructions properly declared the law.

GANTT, P. J.—The defendant in this case was indicted at the October term, 1892, of the criminal court of the city of St. Louis. The defendant together with one Patrick Duffy was charged with the rape of Mrs. Ellen Rose, a woman over fourteen years of age, at the city of St. Louis, on the second day of November, 1892. The indictment was returned on November 3, and, for want of time to hear the cause at the October term, was continued to the November term. At the November it was again continued "as on affidavit" and specially set down for January 30, 1893. A severance was granted defendant on January 4. On Janu-

ary 30 defendant was arraigned, his plea of not guilty entered, a continuance refused, and cause set down February 6, at which time both sides announced ready, and cause tried to a jury and defendant convicted and his punishment assessed at thirty years in the penitentiary.

The evidence in this case is such as to cause a regret that it should ever find a place among the records of this court. Certainly it is such that should not stain the published reports. For the purposes of this opinion, it is sufficient to say that the evidence discloses that on November 2, 1892, Frank T. Rose and his wife, Ellen Rose, came from their farm near Falling Springs in St. Clair county, Illinois, with a wagon load of produce consisting of vegetables, butter, eggs and honey. During the day they sold their produce and about five o'clock started for their home, by way of the Cahokia ferry, their usual route. When they reached the ferry, they were informed by the ferryman that he would make no other trip that night.

While considering whether they should go up the river and cross the bridge, they were pursuaded by one Schweigeler, who kept a lodging house and saloon, to stay all night with him. His establishment was on the levee between Anna and Sidney streets, near the ferry landing. They put up their horse, had their supper, and after supper Mrs. Rose concluded that she would visit a relation of hers on Papin street, some distance up the city. Mr. Rose was suffering from rheumatism and the weather was cold, with a drizzling rain prevailing, and on this account did not accompany his wife. Mrs. Rose was then about fifty-eight years of age, the mother of six children. Leaving her husband, she went to Broadway, thence north until she reached the French Market. Here she was overtaken by the rain and took refuge in the Market near the junction

of Broadway and Chouteau avenue. On account of the rain, she abandoned her visit to her relative and after the rain started to return to her husband. She, however, stopped at a grocery store where she had had some dealings. It appears to have been after eleven o'clock when she reached Anna street on her return. On Anna street she met or passed two police officers, Anton and Manger. Of these she inquired the way to Schweigeler's and they directed her to go down Anna street to the river. When she had gone about two blocks east of Anna, after passing the officers, she was suddenly seized by two men and forcibly carried into a lumber yard and according to her evidence, cruelly outraged.

Her evidence is corroborated by Officer Anton, who, on his return to that vicinity of his beat that night, heard her groans. Being attracted thereby, he went into the lumber yard where he discovered this defendant on top of Mrs. Rose, and heard his obscene expressions. Immediately by him, only about four feet distant, sat his codefendant, Duffy. The officer hurried to the spot and gave defendant two or three strong slaps with his club, and arrested both defendant and Duffy. He testifies that during all this time Mrs. Rose was groaning as if in great pain. Her clothing was covered with mud; her underclothing bloody and torn; her nose bleeding and bruised, and when she reached the police station there were marks showing she had been choked severely. Mrs. Harris, the police matron, who saw Mrs. Rose during the forenoon of that day, (November 3) fully corroborated the facts as to her bruises and bloody condition and the mud on her clothing.

Defendant's defense was very equivocal. Having been caught by the officer and kept under arrest, he made no attempt to deny that he and Duffy were with Mrs. Rose, but sought to make the impression that she

solicited them to receive these favors of her, unsolicited by them. When asked in chief by his counsel, if he ravished her or if he had connection with her, his answer was, "*No sir, not then.*" Later on he denied that he either raped her or had connection with her at all, voluntary or otherwise. He admitted, however, that when the officer, Anton, appeared on the scene, he was lying by the side of the old lady, in the lumber yard, on the wet ground, in a misty rain.

It was also a part of the defense that Mrs. Rose was intoxicated that night. As to this, her husband swore she was perfectly sober when she left him to go up town. Both Anton and Manger, the officers, swore she was not drunk or at least had none of the signs of intoxication about her when she passed them about midnight, on Anna street. Mrs. Harris, the matron, says she had no appearance of having been drunk next morning. It was attempted to show by a saloon keeper and two or three other witnesses that about twelve o'clock that night she was in the saloon of one Menge; that while there she drank three glasses of beer and called for the fourth which was refused her. Menge identified Mrs. Harris, the matron, as the woman who was in the saloon, but, as soon as he discovered that it was the matron, took it back. Mrs. Rose positively denies ever being in that saloon that night and the identification was exceedingly unsatisfactory.

The only explanation defendant gave of the compromising position in which he was caught by the officers was that the old lady had asked them to show her the way to the ferry and he and Duffy wanted to show her.

There was evidence that defendant had a good character for sobriety, truth and veracity and morality in that neighborhood.

I. The point made in this court that the criminal court erred in refusing a continuance cannot be considered by us, because no exception was saved to the refusal.

II. Among other things, appellant complains that the court refused to permit him to ask Mrs. Rose "if the officer, Anton, did not induce her to come over to St. Louis and make this prosecution." The court did exclude this question but defendant's counsel immediately propounded this question: "What inducement, if any, did officer Anton make to you to induce you to come over here and make this prosecution?" This question the court permitted and she answered fully that, "he didn't make any inducement." The two questions are so similar that it is absolutely certain no harm did or could have accrued from the refusal of the first, when the second was permitted. *State v. Sansone*, 116 Mo. 1; *State v. Smith*, 114 Mo. 406.

III. It is also suggested as error that the court erred in permitting the prosecuting attorney to offer in evidence the bloody underclothing of the prosecuting witness, after having first fully identified them and accounted for their keeping. The objection was not that these garments were not competent, but that their evidence *"was not responsive* to any examination made by counsel of defendant." The objection was not good for the reason assigned or for any other legal reason. The clothing so identified was competent evidence tending to show the injuries inflicted and to corroborate the other evidence on the part of the state.

IV. Nor was there any error in permitting Mrs. Harris, the matron, to testify as to the condition of Mrs. Rose as to bruises and the condition of her clothing next day. The examination disclosed that Mrs. Rose was outraged from one to two o'clock on the morning of November 3, 1892; and that she was taken

to the police station and kept there until noon and after of that day. Mrs. Harris testified she saw her during the forenoon of that day. Following so close upon the alleged crime, it was clearly relevant as one of the tests whether a rape had been committed at all. The bruises on her neck and face; the condition of her clothing, would indicate whether she had struggled to resist her ravishers.

V. There is no merit whatever in the assignment that the criminal court erred in permitting the prosecuting attorney to bring different ladies in the court room when Menge, the saloon keeper, and other men were undertaking to identify Mrs. Rose as a woman who had been in Menge's saloon that night. It was a legitimate test of their ability to identify Mrs. Rose, and the result demonstrated the readiness with which identifications are made sometimes and how treacherous such evidence proves to be.

VI. It was a matter within the wise discretion of the criminal court to permit the prosecuting attorney to recall officer Anton to impeach a statement of the defendant as to the condition of his clothing and the exhibition of his person when arrested. No new matter was brought out but a strict rebuttal of matter about which defendant had been fully examined. The order of testimony is a matter that must necessarily be left largely to the judgment of the trial courts, and, unless a clear case of abuse is shown, it is no ground for reversal.

VII. We perceive no error in the court failing to instruct on the evidence as to good character of its own motion. No instruction on the subject was asked or suggested by the defendant or his counsel. His character was a fact to be submitted along with all the other evidence, but, in the absence of any instruction being asked, it was not reversible error for the

court to omit to charge on that phase of the evidence. *State v. McNamara*, 100 Mo. 100; *State v. Brooks*, 92 Mo. 542.

VIII. Objection is made to instruction numbered 4, which is as follows:

"The court instructs the jury that, before they can find the defendant guilty of rape as charged, they must find from the evidence that he had sexual intercourse with Ellen Rose and used force upon her to accomplish it, and that she made such resistance as she was capable of to prevent it, and did not give her consent thereto, and whether or not that consent was or was not given may be inferred from all the facts and circumstances given in evidence."

The instruction was well enough. It is hard to conceive of Mrs. Rose using more resistance than she was capable of using. The instructions taken together require the jury to find this offense was perpetrated by force, against her will, without her consent, and that she used all the resistance of which she was capable, and the law requires no more. It fully met the statutory definition and that is sufficient. *State v. Miller*, 93 Mo. 263.

IX. There was no error in the fifth instruction, which told the jury that, although they might believe defendant was intoxicated at the time of the rape, yet, if the intoxication was voluntary on his part, it constituted no excuse, in the law, for the crime charged, if the jury found from the evidence that it was committed as charged. This has always been the law of this state and is yet.

It is finally suggested that there were many reasons argued before the criminal court why a new trial should have been granted, but that Judge Edmunds being a new judge, overruled them on account of his inexperience. Of course, it is not pretended any of

these reasons are in this record, and, inasmuch as his inexperience does not appear in any of the rulings he did make, we are bound to presume that he disposed of them with the same good judgment that characterized those of which we have cognizance, and his judgment is affirmed. BURGESS, J., concurs; SHERWOOD, J., in all except the seventh paragraph, as to which he does not dissent, but will express his views in a separate opinion.

### SEPARATE OPINION.

SHERWOOD, J.—Not wishing this cause to be transferred to court *in banc*, is the reason which deters me from dissenting. Nevertheless, I deem it proper to say why the opinion of the court does not meet with my entire concurrence.

Section 4208, Revised Statutes, 1889, so far as necessary to quote it, declares that: "The court must instruct the jury, in writing, upon all questions of law arising in the case, which are necessary for their information in giving their verdict; [and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial]." Of course, when the statute says "*all* questions of law," it means *all, not a fraction less*.

How do questions of law arise in a case? They arise upon the introduction of *all facts* in evidence which have any tendency to establish the innocence or the guilt of the accused. The good character of a defendant when on trial *is a fact* as much as any other, and often times becomes a potent factor in establishing his innocence, when but for such evidence the verdict would be otherwise. This court has frequently held that evidence of *facts* and evidence of *character* rest on

the same basis, and that there is no *legitimate distinction between them;* that the one equally with the other is in every criminal trial to be weighed by they jury in determining the guilt or innocence of the accused. *State v. McMurphy,* 52 Mo. 251; *State v. Alexander,* 66 Mo. *loc. cit.* 161; *State v. Swain,* 68 Mo. *loc. cit.* 615; *State v. McNally,* 87 Mo. *loc. cit.* 659. And this is the prevalent view.

Thus, in *Rex v. Stannard,* PATTESON, J., observed: "I cannot in principle make any distinction *between evidence of facts and, evidence of character;* the latter is equally laid before the jury, as the former, as being relevant to the question of guilty or not guilty; the object of laying it before the jury is to induce them to believe, from the improbability, that a person of good character should have conducted himself as alleged; that there is some mistake or misrepresentation in the evidence on the part of the prosecution, and it is strictly evidence in the case." 7 C. & P. 673.

TALFOURD, J., says: "It is a *petitio principii* to say that evidence as to character is entitled to weight only in doubtful cases, when really it is to make the case doubtful that such evidence is offered. In some instances, in which guilt would otherwise be established beyond reasonable doubt, evidence of good character may justly produce an acquittal. In other cases it may be inoperative. But in all cases it is an item of proof to be considered by a jury." Cited, Wharton on Criminal Evidence [9 Ed.], sec. 67.

This view of the subject is well illustrated and expressed in *Heine v. Com.,* 91 Pa. St. 145, where GORDON, J., said: "Furthermore, the learned judge of the court below committed an error in saying to the jury: 'If a man is guilty, his previous good character has nothing to do with the case; but if you have doubt as to his guilt, then character steps in and aids in

determining that doubt.' The effect of this was to give the evidence of good character no weight whatever, for if the other testimony left in the minds of the jury a reasonable doubt of the defendant's guilt, this of itself, without more, entitled him to an acquittal. Evidence of good character is not a mere *make-weight* thrown in to assist in the production of a result that would happen at all events, but it is *positive evidence*, and may, of itself, by the creation of a *reasonable doubt*, produce an acquittal.''

Over thirty years ago it was said by this court that, ''the good character of the party accused, satisfactorily established by competent witnesses, is an ingredient which ought always to be submitted to the consideration of the jury, together with the other facts and circumstances of the case.'' *State v. O'Connor*, 31 Mo. 389.

In *State v. McNamara*, 100 Mo. 100, cited in the majority opinion, it is freely admitted as the law of this state ''that evidence of good character of a defendant in criminal cases is always to be considered by the jury in making up their verdict;'' and ''that evidence of good character is to be treated the same as any other evidence of fact in the case.''

Taking these concessions, supported as they are both in this state and elsewhere, as shown by the authorities cited, how is it possible to make any distinction when it comes to instruct the jury between evidence of *facts* and evidence of *character?* For, after all, it is only upon *evidence of some sort* that instructions can be given. Wherever evidence is admissible and is admitted, then instructions must be given upon it, or else it is manifest that the trial court is wanting in its statutory duty to ''instruct the jury, etc., upon all questions of law,'' etc., ''which are necessary for their information in giving their verdict.'' Who so bold as to say that the jury need no instructions as to the effect

of evidence of good character? Evidence of good character, as shown by all the authorities, is *"positive evidence."* Evidence which combats, countervails and overthrows other evidence offered by the state, which of itself creates a reasonable doubt, is sufficient to work an acquittal, is certainly entitled to have an instruction, whether asked or not, bottomed upon it, and cannot be esteemed a *"merely collateral matter,"* to be ignored and brushed aside at the pleasure of the trial court.

As early as 1842, it was decided in *Hardy v. State,* 7 Mo. 609, that it was the duty of the court in a criminal trial, "to instruct the jury in all the law arising in the case." There was no statute in this state at that time on the subject. In 1845, however, a law was enacted which declared: * * * "On the trial of the issue on any indictment, * * * the court may instruct the jury on any point of law arising in the cause." Revised Statutes, 1845, p. 882, sec. 28; Revised Statutes, 1889, sec 4220. The word *"may,"* in this section, concerning, as it does, a matter of public interest, and being for the public good, means *"shall."* *Railroad v. Platte Co.,* 42 Mo. 171, and cases cited. This court paid no attention to this section, and seems to have been ignorant of its existence. Repeated decisions of this court have since announced the same doctrine as that announced in *Hardy v. State, supra;* *State v. Matthews,* 20 Mo. 55; *State v. Schoenwald,* 31 Mo. 147; *State v. Jones,* 61 Mo. 232.

In *State v. Stonum,* 62 Mo. 596, where the defendant *asked no instructions*, this court held that the court *should have given such as the law required,* and that in such cases *"juries should not be allowed to guess at the law."*

In *State v. Branstetter,* 65 Mo. 149, decided in 1877, a similar ruling was made that it was the duty of the court to give the jury *all* proper instructions *appli-*

·cable to the case made by the evidence, whether such instructions, or any, were asked by the defendant or not, and that this was the settled law of this state.

Section 1908, Revised Statutes, 1879, which is the same as section 4208 supra, minus the brackets, was approved May 19, 1879. State v. Kilgore, 70 Mo. 546, was tried at the June term, 1879, of the Audrain circuit court. The opinion of this court was delivered in that case on February 2, 1880. In that case it was ruled, so far as needful to be mentioned here, that it was not necessary for the court, of its own motion, to instruct the jury that the testimony of an impeaching witness could only be received for the purpose of impeachment, and could not be received as evidence against the accused, and that such points in evidence were merely "collateral matters," as to which instructions, if desired, should be asked. But in that case, section 1908 was not noticed, and no attention paid to its mandatory provisions. So that that case cannot be regarded as authority based on the statute, nor, indeed, upon prior, nor upon subsequent, decisions, because in State v. Banks, 73 Mo. 592, it was ruled to be error for the trial court, though not requested, to fail "to give correct instructions covering the whole law arising on the facts." A like ruling was made in State v. Palmer, 88 Mo. 568, neither of which cases was noticed in State v. Brooks, 92 Mo. 542, nor in State v. McNamara. These remarks bring me to another case cited to support the ruling of the majority.

It will be observed that in quoting from section 4208 of our statute, I have included some words in brackets. These were added to section 1908, Revised Statutes, 1879, and the reason of their addition to that section was this: In 1887 the case of State v. Brooks, 92 Mo. 542, was decided at the April term, 1887, in which the lower court not only erred generally, but failed to

instruct the jury upon all questions of law, etc., and this court affirmed the judgment. In that case I dissented, and in my dissenting opinion quoted section 1908, *supra*, which, though cited by defendant's counsel, had not been noticed by the court. Then, on a motion for rehearing being filed, an opinion was delivered and the correctness of my position of the authoritative and mandatory force of the fourth clause of section 1908, *supra*, and the duty of the court thereunder was virtually conceded and was not denied, *except upon the theory* that that section was *"borrowed from an Indiana statute,"* and, therefore, it was ruled that, with that *borrowing process adopted*, decisions of that state were applicable which held under *their* statute that instructions desired by a defendant in a criminal case should be asked, or else it was no error to fail to give them.

This theory was well enough, and there was only *one trouble* about it, and that was, it had no facts to support it, as I conclusively showed in a second dissenting opinion in reply to the opinion of the court on rehearing, in which I established that section 1908 was *not "borrowed from an Indiana statute,"* but from a *Kansas* statute, and that the Indiana statute, section 1823 contained this particular clause: *"Sixth. If the prosecuting attorney, the defendant, or his counsel, desire special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party, or his attorney, asking them, and delivered to the court before the commencement of the argument,"* etc., etc. That sixth clause shows very pointedly how foundationless is the assumption on which the *Brook's case* rests, and how fallacious is the claim, that it is entitled to any respect whatever as authority in construing section 1908.

Moreover, in 1889, at the *next* session of the legis-

lature, after the decision in the *Brook's case* was promulged, the general assembly added to section 1908 the words I have placed in brackets.   This addition to that section, considered in the light of the history of the *Brooks case* and the wide-spread attention it attracted; and considering how swiftly that addition followed upon the heels of that grossly erroneous decision, it may properly be regarded as *a well merited legislative rebuke* of a decision remarkable on the point mentioned, as well as upon many others.

But it is unnecessary to pursue the subject further, since the recent decision in *State v. Taylor*, in which all I have heretofore contended for is conceded.