## THOMAS A. FELKER v. MARY A. BREECE and GEORGE BREECE, Appellants.

Division Two, March 15, 1910.

1. **LOST DEED: Proof of Contents Before Loss.** The order of introducing testimony is a matter resting largely in the discretion of the trial court; and it is not reversible error to permit a party to prove the contents of a lost deed before its loss is shown, where its loss is subsequently satisfactorily established.

2. ————: **Proof of Loss: Proof of Contents: Establishing Title.** The land belonged to Owens and plaintiff claimed through him by a lost deed made to Crawford in 1860, and by another deed made by Crawford's only heir to plaintiff in 1905. The inventory of Crawford's estate made in 1866, contained this memorandum: "Deed of Richard Owens and wife, dated February 28th, 1860, recorded in Book C, p. 499, Maries County, Mo., for southwest quarter of section 7, and northwest quarter of section 18, township 40, range 10, containing 314.17 acres in Maries county, Mo."—which was the land in suit. The evidence showed that Record C was destroyed by fire after 1860, and the maker of this memorandum forty years later testified that it was in his handwriting, that he signed it, that he knew it was a correct memorandum made from the deed itself which he held in his hand, but that independently of those facts he could not recall ever having seen the deed. Crawford died leaving an

Felker v. Breece.

only daughter, and she testified that the deed was given to her by her administrator when she came of age in 1882, that she kept it in a locked box and the last time she saw it was in 1900; that later her husband died and her papers had become scattered and since then she had searched for the paper a dozen times, in the box, her trunk, and safety deposit locker, without finding it, and that it was after her husband's death that she learned the record of this deed had been burned. She then testified as to its contents thus: "The deed was from Richard Owens and wife to James Crawford, and it was for the sale of land in Maries county—the township I don't remember, nor just how or where the land was situated. It was for 314 acres and a fraction. I remember that it was signed. This is all I remember of the inside of the deed. On the outside were the names of Richard Owens and wife, and James A. Crawford, and other writings which I don't remember." The record showed taxes were paid by the Crawford estate from 1881 to 1889 and thereafter for a number of years by this daughter. Defendant obtained a deed in 1905 from an heir of Owens for $10, paid the taxes for 1904, and had been in possession since he bought and showed no payment of taxes by Owens or his grantor. *Held, first,* that the evidence of the loss of the deed laid a sufficient foundation for proving its contents; and, *second,* that the court properly decreed the title to be in plaintiff.

3. **PAYMENT OF TAXES.** A failure by defendant and those under whom he claims to pay taxes for more than thirty years is admissible in evidence as tending to show that neither they, nor the one under whom they claim, claimed to be the owners of the land.

4. **QUIETING TITLE: Plaintiff's Recovery: On Strength of His Own Title.** The rule in ejectment that plaintiff must recover, if at all, upon the strength of his own title, and not on the weakness of defendant's, does not apply to a suit under Sec. 650, R. S. 1899, to quiet title. Plaintiff is entitled to a decree if he shows a better title than defendant does

Appeal from Maries Circuit Court.—*Hon. Wm. H. Martin,* Judge.

Affirmed.

226 Sup—21

*W. H. Allen* for appellants.

(1) One who relies, to sustain his title to real estate, upon a lost deed, or asserts rights under any lost instrument, must prove the execution, loss and the material parts of such deed or instrument, by clear, cogent and convincing evidence; the same measure of proof is required as in suits for reformation of instruments, and the evidence must be of the clearest and most satisfactory character. Peters v. Worth, 164 Mo. 431; Napton v. Leaton, 71 Mo. 358; Dagley v. Black, 197 Ill. 53; Van Horn v. Munnell, 145 Pa. St. 497; Edwards v. Noyes, 65 N. Y. 125; Connor v. Pushor, 86 Me. 300; Shorter v. Shepard, 33 Ala. 648; Williams v. Miles, 68 Neb. 463; Clark v. Turner, 50 Neb. 290; Jacques v. Horton, 76 Ala. 238; Slipman v. Telschow, 24 Ohio Cir. Ct. 236; Jones on Evidence (2 Ed.), sec. 227. (2) Where it is sought to pass title to real estate by parol or secondary proof of the contents of a lost deed, such proof must establish, not only its legal execution by the supposed grantor, but all of the material and essential parts of such instrument as a legal conveyance; must show clearly and pointedly its tenor and contents, and whether it conveys a fee simple, a life estate, a term for years, or otherwise, as the case may be. Dagley v. Black, 197 Ill. 53; Edwards v. Noyes, 65 N. Y. 125; Shorter v. Shepard, 33 Ala. 648; Van Horn v. Munnell, 145 Pa. St. 497; Roe v. Irwin, 32 Ga. 39; 3 Wigmore on Evidence, sec. 2105; Jones on Evidence (2 Ed.), sec. 227. (3) Before secondary evidence of the contents of a written instrument can be admitted in evidence, the existence and legal execution of such instrument must be clearly established, and its loss shown. Zollman v. Tarr, 93 Mo. App. 234; Shea v. Seelig, 89 Mo. App. 149; Linn v. Insurance Co., 78 Mo. App. 203; Holman v. Bacchus, 24 Mo. App. 636; Hunt v. Selleck, 118 Mo. 593; Atwell v. Lynch, 39 Mo. 519; Perry's Admrs. v. Roberts, 17

Mo. 36; Hardin v. Lee, 51 Mo. 244; Johnson v. Gas Co., 90 Ala. 505; Burke v. Hammond, 76 Pa. St. 172.

*W. S. Pope* and *J. W. Terrill* for respondent.

The evidence that Richard Owens and wife conveyed the land to James M. Crawford was as strong and conclusive as the circumstances of the case could make it, and grounds for introduction of secondary testimony were complete. Winham v. Kline, 77 Mo. App. 36; Abel v. Strimple, 31 Mo. App. 86; Briggs v. Henderson, 49 Mo. 531; Foulk v. Colburn, 48 Mo. 225; Henry v. Diviney, 101 Mo. 378; West v. West, 75 Mo. 204; Bogart v. Greene, 8 Mo. 115; Smith v. Lindsay, 89 Mo. 76; Einstein v. Holliday-Klotz Co., 118 Mo. App. 184; Ming v. Olster, 195 Mo. 460; Graton v. Holliday-Klotz Co., 189 Mo. 322; Hannah v. Insurance Co., 109 Mo. App. 152; Montgomery v. Dormer, 181 Mo. 5; Liles v. Liles, 183 Mo. 326; Stephans v. Metzger, 95 Mo. App. 609; Rissler v. Insurance Co., 150 Mo. 366; Addis v. Graham, 88 Mo. 197; Perkins v. Fielding, 119 Mo. 149.

BURGESS, J.—This is a suit under section 650, Revised Statutes 1899, to ascertain and determine the title to certain land described in the petition as the southwest quarter of section seven, and the northwest quarter of section eighteen, township forty, of range ten, in Maries county, Missouri, and containing three hundred and twenty acres.

Both parties to the suit claim under Richard Owens as the common source of title. Plaintiff bases his claim of title to the land in controversy on a quitclaim deed, dated December 1, 1905, from Margaret C. Mulhall, only heir of James M. Crawford, quitclaiming said land to plaintiff, and on an alleged lost deed to said land from the said Richard Owens to the said Crawford, which deed, as claimed by plaintiff, was dated February 28, 1860, and recorded in Book "C,"

p. 499, in the office of the recorder of deeds of Maries county, and the record thereof was burned.

To establish the execution and contents of said alleged lost deed from Richard Owens to James M. Crawford, plaintiff offered and read in evidence the deposition of Robert A. Bakewell, of the city of St. Louis, who testified that he made the inventory of the estate of James M. Crawford, deceased, filed in the probate court of said city, and identified said inventory as having been made by him, and signed by him as a witness thereto. This inventory, a certified copy of which was introduced in evidence, contained, among others, the following recital:

"Deed of Richard Owens and wife, dated February 28, 1860, recorded in Book C., p. 499, etc., Maries county, Missouri, for southwest quarter of section 7, and northwest quarter of section 18, township 40, range 10, west of fifth principal meridian, containing 314.17 acres, in Maries county, Missouri."

This inventory purported to have been signed by Mr. Bakewell, as a witness, on March 16, 1866. Apart from the inventory, however, the witness had no independent recollection of the deed. The question was asked him if he could recollect the time and place and the document from which he made the memorandum contained in the inventory, to which question he replied: "As to the place I have no recollection; but as to the fact that I held in my hands, on the date of that inventory, a deed purporting to be made by Richard Owens and wife, as stated in the inventory, I know to be a fact, for unless it was so I would not have set it down as my handwriting shows that I did, nor would I have sworn to the correctness of the inventory. Q. Have you any independent recollection of it? A. I could not for the life of me, from any independent recollection aside from seeing the inventory, say anything about its contents. Q. Or the deed it describes, either? A. I have no independent

recollection of the deeds, but I know that the deeds set forth in that inventory are correctly set forth, and were in my hands at the date named. I know that from the fact that I signed and swore to the inventory. Q. Now, from your habit of doing business, if there had been anything defective about that deed that you noticed, what would you have done about making the inventory? A. I would have noted the fact if it was a glaring deficiency such as the omission of the name of a party, or no certificate of record of the deed, or no acknowledgment. I think it would not have escaped me. Q. You could not state any of the contents of that deed, from memory? A. No, I could not.''

Plaintiff also introduced in evidence the deposition of Margaret C. Mulhall, who executed the quitclaim deed to plaintiff. She testified that she was the daughter and only surviving heir-at-law of James M. Crawford, who died in 1866; that her father owned a tract of land in Maries county, containing 314 acres and a fraction; that she paid taxes on it, the first payment being in 1882, and the last payment in 1901, but that the tax receipts had been mislaid and she was unable to find them; that she was unable to describe the land; that she had seen, and had in her possession in 1901, a deed from Richard Owens and wife to James M. Crawford, and that the same had been mislaid or lost; that she could not give the contents of the instrument, except that it was for 314 acres of land in Maries county, and had on the back thereof a notation to the effect that it was from Richard Owens and wife to James M. Crawford. She did not know whether the deed had been recorded, but she presumed that it had been recorded during her father's lifetime, as it was handed to her by the administrator. She had tried to sell the land since her husband's death in 1900, and while trying to sell it was informed that the courthouse was burned a number of years ago, and

that some of the records, including the record of this deed, had been destroyed; that she heard this in 1901, after she had misplaced the deed.

L. N. Hawkins, circuit clerk and recorder of deeds of Maries county, testified on behalf of plaintiff that parts of deed records "B," "C" and "E" were missing from his office. Upon examining certain other records, the witness testified that the date of the filing of the last deed recorded in "A" was June 15, 1857, and of the first deed recorded in "D," November 7, 1860; that "E" was gone, and that the first deed recorded in "F" was in December 10, 1866.

Testifying in his own behalf, plaintiff stated that he had been deputy collector of the revenue for Maries county from 1881 to 1885, and collector of the revenue from 1885 to 1889, and that during that period of time the taxes on the land in question were paid by the Crawford estate; that for some years afterwards the taxes had been paid by him as agent for Margaret C. Mulhall, and that at no time while he was in office were any taxes paid on said land by Richard Owens. Plaintiff further testified that the land had been sold for delinquent taxes in the year 1898, under an execution in a suit for taxes against the unknown heirs of Richard Owens, and that he had purchased the same at the sale. He also testified that he remembered the occasion of the burning of the Maries county courthouse, he being at the time about eight years old.

John W. Terrill, one of plaintiff's attorneys, testified that he had made an examination of the records with reference to the assessment of the property, and that for a number of years, so far as his examination extended, the property had been assessed to M. Crawford.

Defendants introduced in evidence a warranty deed executed by Mary Bierman and husband, Henry Bierman, of the city of St. Louis, conveying the land in controversy to Mary A. Breece, defendant, said

deed being dated March 17, 1905, and recorded March 20, 1905. The consideration named therein was one thousand dollars.

Defendants also introduced in evidence the deposition of Mary Bierman, the grantor named in said warranty deed, who testified that Richard Owens, the common source of title, died in 1880, and that she was his daughter and only surviving heir-at-law. She further testified that ten dollars was the consideration paid her for said deed.

Defendant George W. Breece, husband of Mary A. Breece, testified that he and his wife were in possession of said land, and exercised ownership over it since the time his wife purchased the same from Mary Bierman, on March 17, 1905. He further testified that, early in 1905, he learned that the land was about to be sold for delinquent taxes as the result of a suit for taxes against the unknown heirs of Richard Owens, and that he then went to St. Louis and secured from Mrs. Bierman the said deed to his wife, paying ten dollars as the consideration therefor.

At the close of the evidence the defendants asked the court to declare the law to be that, under the pleadings and the evidence, plaintiff was not entitled to recover, which the court refused to do, the defendants excepting.

The court found the issues for the plaintiff, and by its judgment, duly entered of record, decreed that plaintiff was the absolute owner of the land in dispute, and that defendants did not have any title, estate or interest therein, and also rendered judgment against defendants for costs. From this judgment defendants appeal.

Defendants contend that the court erred in admitting any testimony as to the contents of the alleged lost deed before its execution and loss were shown. This must have reference to Judge Robert A. Bakewell's testimony and to some few preliminary ques-

tions put to Mrs. Mulhall regarding the land in controversy, and before she testified as to the loss of the deed.

In Cross v. Williams, 72 Mo. l. c. 580, NORTON, J., speaking for the court said: ''While the rule is well established that before the contents of an alleged lost writing can be shown, its loss must be established to the satisfaction of the court; yet, when the evidence as to its contents is first received and satisfactory proof made of its loss afterward, the mere fact of reversing the order for the introduction of evidence cannot be considered as reversible error, especially when the evidence, as in the present case, as to the loss of the writing, is full and satisfactory;'' citing State v. Linney, 52 Mo. 40. It has been many times ruled by this court that the order of introduction of evidence is a matter resting largely in the sound discretion of the trial court, and that if that discretion has not been abused to the detriment of the other party, the action of the court will not be disturbed. [King v. Gilson, 206 Mo. 264; Garland v. Smith, 127 Mo. 567; State v. Buchler, 103 Mo. 203; State v. Murphy, 118 Mo. 7.]

The testimony of Judge Bakewell as to the identity of the deed from Owens to Crawford is not as clear and strong as it might be; yet, it must be remembered that the inventory of the Crawford estate covered a very large number of items, among them memoranda of several conveyances of land, including the one in question, and it could not be expected that his memory of the deed and its contents could be very clear, the inventory having been made in 1866, forty years before the trial of this suit. The witness was very careful, as became a reputable lawyer and former judge of the St. Louis Court of Appeals, not to overstate or color the facts as he remembered them. He was attorney for the administrator of the estate, assisted in making the inventory, the memorandum of the deed in question being in his handwriting, and the

inventory was signed by him as a witness thereto. His testimony, in substance, was that while he made such memorandum, he did not, independently thereof, have any recollection of the deed or its contents, but that, from his methods of business as a lawyer, he knew that such deed must have been in his hand at the time he made the memorandum, and that if the deed showed any deficiency, such as the omission of the name of a party, or of the certificate of record, or of the acknowledgment, he would have made a note of such fact.

Mrs. Mulhall, who quitclaimed the land to plaintiff, testified that she made diligent search for the deed from Richard Owens to her father, James M. Crawford, but was unable to find it. She stated that the deed first came into her possession in 1882, when she became of age, and that it was handed to her by the administrator. The last time she remembered seeing it was in February, 1900, when she saw it among other papers in her possession, and kept by her in a private lock box. After that her husband died, and her papers and belongings became scattered. Since then she searched for the paper in said lock box, also in a safe deposit locker, where she for a time kept her private papers, and went through her "trunks, boxes, etc., a dozen times," without finding it. After her husband's death, in 1900, she tried to sell the property, when she was informed that the courthouse had been burned a number of years before, and that a number of records were burned, the record of this deed among them. This evidence, we think, laid a sufficient foundation for the secondary evidence offered as to the contents of the deed. The sufficiency of the proof of the loss or destruction of a written instrument, in order to permit secondary evidence of its contents, rests largely in the discretion of the trial court. [Liles v. Liles, 183 Mo. l. c. 336; Henry v. Diviney, 101 Mo. 378; Greenleaf on Evidence (16 Ed.), vol. 1, sec. 563b.]

After giving her testimony as to the loss of the deed, the witness was asked to describe it and its contents. Her answer was: "The deed was from Richard Owens and wife to James M. Crawford, and it was for the sale of land in Maries county—the township I don't remember, nor just how or where the land was situated. It was for three hundred and fourteen acres and a fraction. I remember that it was signed. That is all I remember of the inside of the deed. On the outside were the names of Richard Owens and wife, and James A. Crawford, and other writings on the back of the deed which I don't now recall."

It was established by competent evidence that a number of deed records had for a long time been missing from the office of the recorder of deeds of Maries county, among them deed record "C." The memorandum made by Judge Bakewell in the inventory referred to recited that the deed in question was recorded in book "C," at page 499. The proof was that the date of the filing of the last deed recorded in book "A" was June 15, 1857, and of the first deed recorded in book "D," November 7, 1860. The said memorandum recited that the deed was dated February 28, 1860, which came between the two other dates; so that the facts in evidence regarding these important matters are in perfect harmony.

We cannot agree with defendants that the court erred in admitting evidence of the assessment and payment of taxes. The evidence showed that from 1881 to 1889 the taxes on said land were paid by the Crawford estate, and that for a number of years afterwards the taxes thereon were paid by the plaintiff, acting as agent for Mrs. Mulhall, only heir of James M. Crawford. There was no evidence that any taxes had been paid by Richard Owens' heir, Mary Bierman, through whom defendants claim title, and if any taxes were so paid, it is fair to assume that defendants' counsel would be quick to show it.

As said by Judge SCOTT in Draper v. Shoot, 25 Mo. 197, "it would be an argument against one claiming to hold land, that he should for twenty years fail to pay the annual assessments upon it. If unexplained, such omission would certainly weaken the pretense that he claimed the land as his own, as such conduct is contrary to the course of men of ordinary prudence in relation to property to which they set up a claim. The payment of taxes may go to the jury with other circumstances." So it was proper for the court, in determining the question of title in this case, to take into consideration the evidence in relation to the payment of taxes in connection with the other and more important facts in evidence.

True, the record shows that this land was sold in 1898 to satisfy a judgment for delinquent taxes against the unknown heirs of Richard Owens, and that plaintiff became the purchaser; but he did not rely on his tax deed to support his claim, nor did he offer it in evidence. An examination of the assessor's books failed to show, however, that the taxes, since 1880, had been assessed to Richard Owens or his heirs. But these facts have little weight in this case, and the court so held.

The only evidence introduced by defendants tending to show that Richard Owens was the owner of the land in controversy at the time of his death was the testimony of Mary Bierman, who executed the deed of March 17, 1905, to defendant Mary A. Breece. After testifying that she was the only living heir of Richard Owens, this leading question was put to her: "You knew also, did you not, that your father owned this land at the time of his death?" Her answer, was, "Certainly I did." Beyond that, there was no proof whatever of Mrs. Bierman's ownership of the land, or that she exercised any acts of dominion over it, or made any claim to it, or paid any taxes thereon. In fact it is not shown that, before she was approached by

defendant George W. Breece on the question of making the deed to his wife, she was aware of the existence of this land. While the deed from Mrs. Bierman to Mrs. Breece gave the consideration as one thousand dollars, the fact was that the consideration paid was ten dollars. Breece testified that, early in 1905, he saw the fact advertised in a newspaper that the land was to be sold for delinquent taxes under a judgment against the unknown heirs of Richard Owens, and learning that Owens' heir lived in St. Louis, he hunted her up, and after telling her that the land was about to be sold for taxes she agreed to execute a deed to his wife for ten dollars. Under the deed so procured defendants went into possession of the land, and paid the taxes thereon for the year 1904. Certainly, under the evidence, defendants' claim of title rests upon a very dubious and uncertain foundation.

While in suits in ejectment the rule is that the plaintiff must show the legal title to be in him, and must recover on the strength of his own title or right to possession, and not on the weakness of defendant's title, that is not the rule which governs in suits under section 650, R. S. 1899. The question is thoroughly discussed in Graton v. Land & Lumber Co., 189 Mo. 322, which was a suit under said statute. In that case Judge GANTT, speaking for the court, said:

"It is to be observed that by the language of the enactment the controversy is limited to the respective claims of the parties to the action. The statute does not require that the plaintiff shall establish an indefeasible title against the world. The statute does not authorize a proceeding which would make the decree operate as a judgment *in rem*. By its terms no right or title can be litigated save and except such as may be asserted by the plaintiff and the defendant *respectively,* and a decree under the statute would not be binding against strangers to the title and party to the suit. This section has often been before this court

since its enactment, and the statute has been given a highly remedial and beneficial construction. Its purpose clearly is to supplement the old equitable remedy of removing cloud upon title, and is much more comprehensive in its scope. [Huff v. Land & Improvement Company, 157 Mo. 65; Garrison v. Frazier, 165 Mo. 40; Ball v. Woolfolk, 175 Mo. 278.]

"Under a similar but more restricted statute than ours, section 3490, II Compiled Laws of 1857 of Michigan, by which any person having possession may institute a suit against another person setting up a claim thereto in opposition to the title claimed by the complainant, and require the defendant to establish his title to such land, it was ruled in Hall v. Kellogg, 16 Mich. l. c. 138, that the complainant was only bound to make out a case as against the defendant, and 'would not be required to make proof of title beyond that which, when establishing a presumptive case, had not been met by any proofs adequate to shake or destroy it.' The contention in that case was that the statute required the complainant to establish his title by clear and satisfactory proof. In answer to that contention the Supreme Court of that State said: 'If a bill under the statute in question could be filed against all possible parties, so as to make the decree operate as a decree *in rem*, to quiet the title against all the world, there would be great force in this objection, and it would be necessary to decide what amount of proof would suffice to shut out any adverse propositions or possibilities. But we have already decided in Hunton v. Platt, 11 Mich. 264, that a bill seeking to bring in defendants having distinct and disconnected adverse claims would be multifarious. No claim can be litigated by complainant in this cause, except such as may be asserted by the defendant. The decree cannot be binding against strangers to the title and parties in this suit. We can see, therefore, no reason for requiring of complainant any proof of title beyond that

which, when making out a presumptive case against the defendant, has not been met by any proofs adequate to shake or destroy it.' "

The evidence in this case that Richard Owens and wife conveyed the land in controversy to James M. Crawford was as strong and conclusive as the circumstances of the case could call for, and while the execution and contents of the deed, by reason of the loss of the deed and the destruction of the record, could only be proved by secondary evidence, every part and particle of that evidence was consistent with and supported every other part, and was satisfactory under the circumstances.

We conclude that the plaintiff proved at least a presumptively good title as against the defendants, and as his proof of title was not met by any proofs adequate to shake or destroy it, the judgment, under the ruling in Graton v. Land & Lumber Co., supra, should not be disturbed. The judgment is affirmed. All concur.