# CASES DETERMINED

### BY THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI,

### AT THE

### APRIL TERM, 1894.

---

THE STATE v. DUFFY, *Appellant.*

Division Two, July 9, 1894.

| | |
|---|---|
| 124 | 1 |
| 124 | 488 |
| 124 | 1 |
| 141 | 631 |

1. **Supreme Court Practice**: CHANGING INDICTMENT. The attorney general having made suggestion supported by affidavit that the indictment in this case had, since the trial, been changed, mutilated and forged, the supreme court directed the trial judge to examine into and try said issue and to make return of the result thereof to the supreme court.

2. **Criminal Practice**: JUROR: NEWSPAPER REPORTS. A person testifying on his *voir dire* in a criminal cause, that he had read newspaper reports of the case and had formed an opinion which it would require evidence to remove, but that he could try the case fairly, is a competent juror.

3. **Criminal Law**: PRACTICE. It is not error to permit other prisoners to plead guilty in the presence of the jurors.

4. ——: RAPE: EVIDENCE. Where two persons jointly commit a rape, on the trial of one the acts of the other committed in the presence of the defendant in accomplishing the crime are admissible against the latter.

5. ——: ——: ——. Articles of clothing taken from defendant *held* admissible in evidence against him.

VOL. 124—1                                                    (1)

6. ———: ———: ———. On a trial for rape testimony as to the character of the place where the prosecutrix and her husband had put up for the night, before the alleged assault, is inadmissible.

7. **Supreme Court**: WEIGHING EVIDENCE. Where there is evidence to support a conviction, it will not be disturbed because against the weight of the evidence.

*Appeal from St. Louis Criminal Court.*—HON. H. L. EDMUNDS, Judge.

AFFIRMED.

*McDonald & Howe* for appellant.

(1) The court erred in refusing to sustain defendant's challenges to jurors Lenard Meyer and Luther S. Taylor. R. S. 1889, sec. 4197; *State v. Bryant*, 93 Mo. 273. (2) The court erred in allowing several prisoners charged with various offenses to plead guilty in the presence of the jury called to try this appellant, against appellant's objection at the time. (3) The court erred in allowing evidence to go to the jury in relation to Murphy's connection with the case, as he had been previously tried and convicted. (4) The court erred in allowing the circuit attorney to introduce as evidence the appellant's shirt which had been forcibly taken from him. (5) The court erred in allowing the circuit attorney in the re-examination of the prosecutrix and other witnesses to refer to the former trial of the codefendant Murphy and to make use of improper remarks in the presence of the jury while so doing. (6) The court erred in allowing the circuit attorney, in his closing argument to the jury, to make use of improper remarks and arguments. 16 Am. and Eng. Encyclopedia of Law, 524; *State v. Hamilton*, 55 Mo. 520; *Gibson v. Zeibig*, 24 Mo. App. 66; *State v. Pagels*, 92 Mo. App. 300; *State v. Graves*, 95 Mo. 511; *State v. Ulrich*, 19 S. W. Rep. 656; *State v. Young,* 99

Mo. 666. (7) The indictment is fatally defective. Kelley's Criminal Practice [2 Ed.], sec. 190; *State v. Hong Tong*, 22 S. W. Rep. 381; *State v. Clayton*, 100 Mo. 516; *State v. Herrell*, 97 Mo. 105; Bishop's Statutory Crimes, 387, 439; Bishop, Directions and Forms, 179, note.

*R. F. Walker*, Attorney General, and *C. O. Bishop* for the state.

(1) There is nothing in the record sustaining the allegation in the motion for new trial that the court permitted "a number of prisoners charged with felonies to be brought up by the sheriff, and in the presence of the jury allowed them to plead guilty and receive penitentiary sentences, against the defendant's objection at the time." (2) The court did not err in examining witnesses during the trial developing testimony material to the state, and in a manner tending to prejudice defendant's case. The court has the right to interrogate witnesses. *State v. Pagels*, 92 Mo. 300. (3) The jurors challenged by the appellant were fully competent under the repeated rulings of this court. *State v. Williamson*, 106 Mo. 162, and cases cited. (4) The instructions correctly declared and fully covered all the law of the case, and were highly favorable to the appellant. (5) The testimony as to the conduct and acts of Murphy was competent, it being shown all the way through the case that he and Duffy were acting in concert all the time, and, moreover, they were certainly a part of the *res gestæ*. *State v. Murphy*, 118 Mo. 7. (6) The clothing of the prosecutrix, worn at the time of the alleged assault, was competent evidence against appellant. *State v. Murphy*, 118 Mo. 7. (7) There was no error in permitting Murphy to be recalled for further cross-examination in order to lay

the foundation for impeachment, and it was also competent to introduce testimony contradicting his statements made on such recall. 1 Greenleaf on Evidence, sec. 447; *State v. Jones*, 64 Mo. 391. (8) As to the alleged improper remarks of prosecuting counsel, those made in the opening argument were legitimate, and, if not, were not excepted to. If there was any impropriety in those set out on page 243, they were corrected by the remarks of the court. The other remarks were fully justified by the evidence. *State v. Emory*, 79 Mo. 461.

BURGESS, J.—At the October term, 1892, of the St. Louis criminal court defendant and one Patrick Murphy were jointly indicted for rape. The assault was committed upon one Ellen Rose, a female over fifty years of age. The indictment as to Duffy was subsequently quashed, and at the March term, 1893, of said court, he was separately reindicted.

On May 25, 1893, a trial was had which resulted in defendant's conviction, fixing his punishment, at imprisonment in the penitentiary for a term of twenty years. The case is in this court on his appeal.

On the arrival of the transcript the cause was set for hearing on the tenth day of April, 1894, and argued and submitted on that day. Subsequently, however, on suggestion of the attorney general, that, since the trial of the cause in the criminal court of St. Louis, the indictment had been changed, mutilated and forged in this, that the words "unlawfully and feloniously" had been erased therefrom, by which it was rendered void and of no force or effect, which suggestions and motion were supported by affidavit, said submisson was set aside on the —— day of ——. 1894.

The State v. Duffy.

On June 12, 1894, the following order and rule were made in said cause by this court on the Hon. HENRY L. EDMUNDS, Judge of the St. Louis criminal court:

"Now at this day, it being suggested to the court by the attorney general, who appears on behalf of the state, that the original indictment on file in the St. Louis criminal court has been fraudulently altered since this cause was tried in said court and prior to the time the record herein was certified to this court, in this, that the words 'unlawfully and feloniously' have been erased therefrom.

"And, whereas the suggestion thus made by the attorney general is duly supported by affidavits, now, therefore, it is ordered that it may be determined whether in deed and in truth said indictment has thus been fraudulently altered and spoliated as aforesaid; it is considered and ordered by this court, that a rule go to the Hon. HENRY L. EDMUNDS, judge as aforesaid, commanding that he do careful examination make of the said indictment in connection with the evidence and affidavits filed herein, and in connection with such other evidence as he may deem necessary to take, and of his own knowledge, he do determine whether said indictment has been fraudulently altered as has been suggested; and if he, the said judge, do find in manner as aforesaid, that said indictment has been altered, that he do proceed at once upon the affidavits and evidence as aforesaid, and on his own knowledge to restore said indictment to what it was at the time the same was signed and returned by the grand jury into court, and certify the same to this court.

"And that he, the said judge, do on or before the sixteenth day of June, 1894, certify under his hand and seal to this court, how he has discharged this rule and order, together with all evidence taken by him in

said cause, together with said indictment which he shall determine as aforesaid, to be the true indictment herein.

"And it is further ordered that a copy hereof be duly certified to the Hon. HENRY L. EDMUNDS by the clerk of this court."

On the sixteenth day of June, 1894, the Hon. HENRY L. EDMUNDS reported that in obedience to the rule and order of this court he had examined into such matters as he might deem necessary in order to determine whether said indictment had been fraudulently altered since the same was returned by the grand jury and having found that it had been so changed and falsified, he corrected the same and forwarded the corrected indictment to this court together with his report.

This report was approved by this court by an entry of record and the corrected indictment ordered to be filed and stand as the true indictment. The cause was then set down for reargument on the thirtieth day of June, 1894, and counsel duly notified, when it was again submitted on the original briefs filed herein.

The prosecuting witness, Ellen Rose, was fifty-eight years of age; had been married thirty-three years; had borne six children; lived in Illinois, and she and her husband were accustomed to go to St. Louis to sell their produce and do their trading. They always crossed the Mississippi river on the ferryboat at "Cahokia Ferry." Ellen Rose and her husband went to St. Louis on November 1, 1892, and after having sold out their produce which they took with them to market made some purchases and started back home. They were directed to go up to the bridge and cross over, but were persuaded by one Schweigeler, who kept a lodging house on the levee, between Sidney and Anna streets, near the ferry landing, to put up with him over night; so they arranged to stay there, put up

their team, intending to cross the river early in the morning. Mrs. Rose had an invalid relative living on Papin street, some distance up town, and after supper she concluded to visit this relative; so, leaving her husband at Schweigeler's, she walked up to Broadway, thence north to Chouteau avenue (a mile or more from the lodging house). Here she was overtaken by a sudden shower, and took refuge in what is called·the "French Market," on Broadway and Chouteau avenue. She abandoned her intended visit, and after the shower was. over started to walk back to Schweigeler's. She passed a grocery store where she had had some dealings, and stopped there for some time, until about or after 11 o'clock; then resumed her walk down Broadway to Anna street, down which she turned towards the river. On Anna street she met police officer Anton, whom she accosted and told where she wanted to go, and inquired if she was on the right road. He directed her how to find Schweigeler's, and she went on down Anna street. She had gone about two blocks when she was suddenly seized by defendant and Patrick Murphy, who took her by the arms and throat, dragged her along to a lumber yard on Second street, between Dorcas and Lynch, into which they bore her, threw her upon the ground and successively outraged her person. She was taken by her hair and feet, flung upon the muddy ground and badly bruised about the chest, abdomen and limbs. How long she was in their power she was unable to state, as part of the time she was unconscious from the violence and the fright. Her underclothing were torn off; she was choked and scratched and bruised and covered with blood and mud. She endeavored to scream and call for help, but her assailants held her by the throat and covered her mouth and nose.

The police officer, Anton, was patrolling his beat, and at about 2 o'clock passed this lumber yard, which was two blocks south of Anna street and about four blocks distant from the place where he had met Mrs. Rose. He heard the sound of groans and voices in the yard, and entered to see what was going on. He found a woman lying upon the ground groaning as if in pain and a man lying upon her. He sprang forward, struck the man over the rump with his night stick; the man got up, whom he recognized as Patrick Murphy and the woman as Mrs. Rose. The defendant, Duffy, was sitting about five feet away upon a board. He placed all three parties under arrest.

Mrs. Rose's clothing was wet and muddy; her undergarments were bloody; her nose was bleeding; her lip cut, and she had some scratches on her face. She was corroborated as to her appearance and condition by another witness, Mrs. Louisa Harris, the police matron, who saw her about twelve hours after the offense was committed.

The evidence on the part of the defendant tended to show that the prosecuting witness was so drunk from the use of intoxicating drinks that she could not walk without assistance; that she was seen in a saloon drinking and treating, and while it tended to show that both Murphy and Duffy had connection with her that it was with her consent.

The first point of contention is the action of the court in overruling defendant's challenges to Lenard Meyer and Luther S. Taylor, who were summoned and sworn as jurors. Meyer stated upon his *voir dire* that he did not know the parties, that he had read of the case, had formed an opinion; that he could try the case fairly notwithstanding the opinion, and that his opinion was of such a character it would require evidence to remove it. Taylor answered substantially in the same

way.   Section 4197, Revised Statutes, 1889, provides that "it shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appear that such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn."   If the decisions of this court in *State v. Bryant*, 93] Mo. 273, and *State v. Williamson*, 106 Mo. 162, are to be adhered to, and we see no reason why they should not be, Meyer and Taylor were clearly qualified to sit as jurors upon the trial of the cause, as it is held in those cases that, although persons who have formed opinions of the guilt or innocence of one accused of crime, from rumor or newspaper reports, are not for that reason rendered incompetent to sit as jurors on the trial of the case, where they answer upon their *voir dire* that they can give the defendant a fair and impartial trial.   Such we understand to be well settled law in this state.

There is nothing, we think, in the point that the court allowed several prisoners charged with various offenses to plead guilty in the presence of the jury called to try the defendant, although he may have objected at the time.   It would be 'strange indeed, if, every time one charged by indictment with crime, and who wanted to plead guilty thereto in a court having criminal jurisdiction, the judge should be required to send out a jury before whom another and entirely different case might then be pending.

The third and sixth assignments are substantially the same, in which it is claimed that the court committed error in allowing evidence to go to the jury in relation to Murphy's connection with the offense for which defendant herein was upon trial.   Murphy and Duffy were alike guilty, they acted together, and in concert, and what one did in the presence of the other, in com-

mitting the offense, was the act of the other as much so as if done by himself.

There was no error in permitting the introduction in evidence of the articles of clothing, including the shirt and pieces from defendant's pants. This court in *State v. Murphy*, 118 Mo. 7, held that such evidence was competent as tending to show the commission of the crime, and as corroborative of the witnesses on the part of the state.

The mode and manner of examining witnesses and interrogating them rests largely in the discretion of the trial court. And unless it is made clearly to appear that such discretion has been unwisely or unjustly exercised, this court will not interfere. We can not say that the discretion of the court was abused, or that it was not rightfully exercised in this case in the examination of witnesses by the circuit attorney, and the case will not be reversed upon that ground.

Another contention is that the court erred in allowing the testimony of Louisa Harris to go to the jury, over the defendant's objection. This objection seems to be predicated chiefly upon the ground that there was a striking resemblance between this witness and the prosecuting witness, Mrs. Rose, and is wholly and entirely devoid of merit. No other objection as to why her testimony should not have gone to the jury, other than as herein indicated, was made, except in a general way. We must, therefore, rule this contention against the defendant also.

A further contention is that the acts of Murphy were not competent evidence against Duffy, but nowhere is it suggested by counsel for defendant in their brief, what particular acts are complained of, nor are we able to conjecture. We have already said that the acts of either one done during the perpetration of

the crime were admissible against the other, and only evidence of such acts was introduced.

The criticism indulged in by counsel for defendant on the tenth assignment of error, with respect of the conduct of the trial judge during the progress of the trial, we think uncalled for and not justified by the facts as disclosed by the record. Trial courts must be accorded large discretion in the trial of causes that come before them, and nothing less than an abuse thereof will justify a reversal.

A still further contention is that the court erred in refusing to allow the defendant to show the character of Schweigeler's place, where it seems that Mrs. Rose and her husband had put up for the night, before the alleged assault. Such evidence was clearly incompetent, and had no tendency whatever to disprove the case as made out by the witnesses for the state.

It is also urged that the circuit attorney was guilty of misconduct in his closing address to the jury. While the remarks complained of were somewhat disgusting and revolting, the facts disclosed by the record in the commission of the crime were equally as much so, and we are not prepared to say that they were not justified by reason thereof. As was said by SHERWOOD, J., in *State v. Emory*, 79 Mo. 461: "We see no reason why it is not as legitimate for the state to call the attention of the jury to the facts from which unfavorable inferences may be drawn, as it is for any other suitor in the courts."

A final contention is that the motion for a new trial should have been sustained, on the ground that the verdict was against the weight of the evidence. It is a well settled rule of this court that it will not reverse a judgment of conviction where there is evidence to support it, but it is unnecessary to invoke that rule in this case, for the evidence showed defendant's guilt, beyond

any reasonable doubt. It is impossible to see how the jury could have arrived at any other conclusion. The crime was of a most heinous character, as brutal and disgusting in its details as in any case that has ever been before this court. The judgment should be affirmed. It is so ordered. All of this division concur.