THE STATE v. WRIGHT, *Appellant*.

Division Two, June 2, 1896.

1. **Criminal Law**: PRACTICE: INSANITY: BURDEN OF PROOF: PRESUMPTION. The law presumes every person who has reached the age of discretion to be of sound mind, and this presumption continues until the contrary is shown; and when insanity is interposed as a

defense in a criminal prosecution, it must be established to the reasonable satisfaction of the jury that the defendant was insane at the time of the commission of the act complained of, and the burden of proving this fact rests upon the accused.

2. ———: ———: ———. The law does not excuse the commission of a crime upon the ground of insanity unless it is of such a character as to render the person committing it actually incapable of distinguishing between right and wrong with respect to the particular act charged at the time of its commission.

3. ———: ———: ———. Positive or direct testimony is not required to establish insanity as a defense, nor is it necessary to establish it beyond a reasonable doubt; it is sufficient if it be proved to the reasonable satisfaction of the jury by the weight or preponderance of the testimony.

4. ———: ———: ———: OPINION OF EXPERT. It is competent for an expert witness to give his opinion respecting the sanity or insanity of a defendant based upon a hypothetical statement of the case, together with what he had learned from a personal examination.

5. Appellate Practice: SETTING ASIDE VERDICT. The appellate court will not interfere with the verdict in a criminal case where there is evidence to support it.

6. ———: OBJECTION TO ADMISSION OF EVIDENCE. Objection to evidence as being "incompetent and immaterial" is insufficient and will not be regarded on appeal; the specific objection to the admission of evidence must be stated at the time.

7. Criminal Law: PRACTICE: IMPROPER REMARKS OF COUNSEL. The statement in argument by counsel for the state in a criminal case, that depositions read in evidence were "absolutely false; that the people who signed them did not know what they were signing. They were not properly certified," will not be ground of reversal where the court rebuked the attorney by telling the jury that the depositions were properly in evidence and should be considered.

8. Practice: INSTRUCTIONS. Where instructions given cover the entire case, refusal of others asked is not erroneous, even though correct.

*Appeal from Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

THE following are the instructions given and refused, called for in the opinion of the court.

*Given by the court of its own motion:*

"1. The defendant is presumed to be innocent until proven guilty beyond a reasonable doubt; if you have a reasonable doubt of defendant's guilt you will acquit him, but such doubt should be a substantial one, founded on the evidence and not a mere possibility of innocence.

"2. You are the sole judges of the credibility of the witnesses and of the weight and value of their testimony. In determining such credit, weight, and value, you will take into consideration the character of the witness; his or her manner on the stand, and of testifying; his or her interest, if any, in the result of the case; his or her relation to or feeling for the defendant, or the deceased; the probability of his or her statement, as well as all other facts and circumstances detailed in evidence. And in this connection you are further instructed that if you believe any witness has willfully and knowingly sworn falsely to any material fact in issue in the case, you are at liberty to disregard all or any part of such witness's testimony.

"3. If you shall believe from the evidence beyond a reasonable doubt that the defendant, William Wright, in the county of Vernon and state of Missouri, on or about the twenty-ninth day of June, 1895, did willfully, deliberately, premeditatedly, and of his malice aforethought strike, cut, and kill Betty Wright with an ax, you will find him guilty of murder in the first degree, as charged in the indictment, and you will say so in your verdict.

"4. 'Willfully,' as used in these instructions, means intentionally, not accidentally. In the absence of qualifying facts and circumstances the law presumes a person intends the ordinary and probable result of his acts; wherefore, if you believe from the evidence that the defendant, with an ax, struck and cut Betty Wright

in a vital part and killed her, you will find that he intended to kill her, unless the facts and circumstances given in evidence show to the contrary.

" 'Deliberately,' as used in these instructions, means in a cool state of the blood. It does not mean brooded over, or reflected upon for a week or a day or an hour, but it means an intent to kill executed by defendant in a cool state of the blood, in furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose; and not under the influence of a vile passion suddenly aroused by some provocation.

" 'Premeditatedly' means thought of beforehand for any length of time, however short.

" 'Malice,' as used in these instructions does not mean mere spite, ill will, or dislike, as is commonly understood; but it means that condition of the mind which prompts one person to take the life of another without just cause, justification, or excuse, and it signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief.

" 'Malice aforethought' means with malice and premeditation.

"5. In this case insanity is interposed as an excuse for the charge in the indictment. This defense is recognized by the law, and should insanity be proven by the evidence in this case to your reasonable satisfaction, it will be your duty to acquit.

"The law presumes every person who has reached the years of discretion to be of sound mind, and this presumption continues until the contrary is shown, so in this case when insanity is pleaded as a defense to a criminal charge, the fact of the evidence of such insanity, at the time of the commission of the act complained of, must, before you can acquit on that ground, be established by the evidence, to your reasonable satis-

faction, and the burden of proving this fact rests on the defendant.

"6. Insanity is a disease located in the brain which so perverts and deranges one or more of the mental and moral faculties as to render the person suffering from this affliction incapable of distinguishing right from wrong, in reference to the particular act charged, and incapable of understanding that the act in question was a violation of the laws of God and society.

"7. The law does not excuse unless the insanity is of such a character that it actually renders the person incapable of distinguishing between right and wrong in respect to the particular act charged at the time of its commission.

"8. Although you may believe from the evidence that the defendant did the killing alleged, yet if, from the evidence you further find, that at the time he did it, he was in such an insane condition of mind that he did not know that he was doing wrong, did not comprehend the nature and character of the act, then such killing was not in law malicious or felonious, and you ought to find him not guilty, on the ground of insanity, and by your verdict say so.

"9. To establish insanity as a defense, positive or direct testimony is not required, nor is it necessary to establish this defense beyond a reasonable doubt. It is sufficient if the jury is reasonably satisfied by the weight or preponderance of the testimony that the accused was, at the time he committed the act, incapable of distinguishing between right and wrong.

"10. The law presumes every man is sane until the contrary is established by the evidence to the satisfaction of the jury; and when insanity in any form is set up as a defense, it is a fact which may not be proven like any other fact. The burden of proving such insanity is on the defendant, and he is not entitled to

the benefit of a mere doubt whether he was or was not insane.

"11. The court instructs the jury that if they believe and find from the evidence, that at the time he did the killing charged in the indictment, the defendant was so perverted and deranged, in one or more of his mental or moral faculties as to be incapable of understanding, at the moment he killed Betty Wright, that such killing was wrong, and that he, the defendant, was at that time incapable of understanding that his act of killing was a violation of the laws of God and society, they should find him not guilty.

"12. If you find the defendant not guilty on the sole ground of insanity, you will so state in your verdict, and you will further find and state in your verdict whether or not he has recovered from said insanity."

*Defendant's instructions given:*

"1. The court instructs the jury that in this case the law raises no presumption against the defendant, but that every presumption of law is in favor of his innocence; and in order to convict him of the crime alleged in the indictment every material fact necessary to constitute such crime must be proved beyond a reasonable doubt; and if the jury entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the defendant the benefit of such doubt and acquit him.

"2. The court instructs the jury that before you can find the defendant guilty of murder in the first degree as charged in the indictment, you must believe from the evidence, beyond a reasonable doubt, that he did the killing willfully, deliberately, premeditatedly, and with malice aforethought. If any one of these elements is lacking, then you can not find defendant guilty of murder in the first degree.

"3. If the jury believe from the evidence that the defendant was insane at the time while he lived in the state of Alabama, or at any time since leaving that state, prior to the alleged killing, then the presumption of the law that he was sane and of sound mind at the time of said killing is removed and repelled; and in case they shall believe that he was insane and of unsound mind when he lived in Alabama, or at any other time since then and prior to the killing, as aforesaid, then and in that case the law presumes that such insanity continues up to and existed at the very time defendant struck deceased the alleged fatal blow, and in that case the defendant is not required to prove that he was of unsound mind at the time of said killing, but it devolves on the state to prove that at the time of said killing he was sane and knew the right from the wrong.

"4. You are instructed that the defense of insanity is one which is recognized by law, and should insanity be proven by the evidence in this case to your reasonable satisfaction, it is your duty under the law to acquit the defendant. You are further instructed that to establish insanity of the defendant, positive or direct proof of it is not required; circumstantial evidence of its existence is sufficient if it reasonably satisfies your mind.

"5. The court instructs the jury that they are to give the same weight to the testimony of the witnesses whose depositions have been read to you as if the witnesses were present and testified in person.

"6. 'Deliberately' means an intent to kill, executed by the defendant in a cool state of the blood, in furtherance of a formed design to accomplish some unlawful purpose and not under the influence of a violent passion suddenly aroused by a real or supposed grievance. A heated passion produced by no legal or adequate cause of provocation is by the law denomi-

nated 'passion or excitement of the mind.' When the mental excitement or passion is suddenly produced by an adequate cause of provocation—such as a blow or the like—and is produced to such a degree as to materially impede or interfere with reason or judgment, then there can be no deliberation in an act done under its immediate or sudden influence; and when this passion is produced by personal violence not provoked by defendant, and such passion so aroused is so violent as to render one not unconscious of his acts, but deaf to the voice of reason, and under the control of such a passion he acts, it is not a deliberate act."

*Defendant's instructions refused:*

"7. Although the jury may believe from the evidence that the defendant did the killing as alleged in the indictment, yet if you believe that at the time he did so, he was of such an insane condition of mind that he could not distinguish between right and wrong, in reference to the particular act, or that he did not possess capacity at the time sufficient to form a criminal intent or purpose, or that he was impelled by some insane impulse, and that either his reason or mental powers were so deficient that he could not refrain from doing the act with which he is charged, then the offense is not malicious or felonious, and you must acquit the defendant on the ground of insanity, and so say in your verdict.

"8. The court instructs the jury that if they believe from the evidence that the defendant did willfully, premeditatedly and of his malice aforethought, on or about the twenty-ninth day of June, 1895, at the county of Vernon and state of Missouri, kill the deceased, Betty Wright, they will find him guilty of murder in the second degree and assess his punishment at a term in the penitentiary not less than ten years.

"9. 'Insanity' as used in this defense, means such a perverted and deranged condition of the mental and mortal faculties, as render a person incapable of distinguishing between right and wrong, and make him unconscious at times, of the nature of the act he is about to commit. Such insanity, if proven to the reasonable satisfaction of the jury to have existed at the time of the commission of the act, is in law an excuse for it, however brutal or atrocious it may have been.

"10. The court instructs the jury that the defendant must be proven to be guilty so clearly and conclusively that there is not a reasonable theory upon which he can be innocent when all the evidence in the case is considered together.

"11. The court instructs the jury that the defendant has by his counsel interposed the plea of insanity as a defense in this case. This defense is one which the law recognizes, and when interposed the state is required to prove the sanity of the defendant at the time of the alleged killing, beyond a reasonable doubt. And if the state fails to prove the sanity of the defendant at said time of killing beyond a reasonable doubt, then it has failed to sustain its case and you should find the defendant not guilty, and so say by your verdict.

"12. 'Malice' as used in these instructions, means the intentional doing of a wrongful act without just cause or excuse.

" 'Malice aforethought' is the intent to do an evil act formed in and by the mind before the doing of the deed is actually entered upon.

"13. 'Willfully' as used in these instructions, means intentionally, not accidentally. In the absence of qualifying facts and circumstances, the law presumes that a person intends the ordinary and probable

results of his acts; therefore if you shall believe from the evidence that the defendant, William Wright, with an ax struck Betty Wright in a vital part and killed her, you will find that he intended to kill her, unless the facts and circumstances given in evidence show to the contrary.

"14. 'Premeditatedly' as used in these instructions means thought of beforehand, but for any length of time however short. It means thought of in the sense of thought over."

*John T. Harding* and *Douglas Wight* for appellant.

(1) The court erred in giving instructions numbered 5, 9, and 10. The burden of proving everything essential to establish the charge against the defendant is on the state. The burden of proof never shifts, but remains with the state throughout. If the defendant introduces testimony sufficient to raise a reasonable doubt as to his sanity then the state must prove it as any other fact. *People v. McCann*, 16 N. Y. 58; *Davis v. United States*, 16 S. C. Rep. 353; *Hopps v. People*, 31 Ill. 358; *Walker v. People*, 88 N. Y. 81; *State v. Crawford*, 11 Kan. 32; *State v. Redemeier*, 71 Mo. 181 (opinion of Judge HENRY). (2) The court erred in refusing instruction number 11 asked by defendant. This or one of its nature should have been given. (3) The court erred in refusing instruction number 10 asked by defendant. The jury should have been directed to the consideration of all the evidence in the case taken as whole; also that the crime alleged should clearly and conclusively be proven before they can convict. (4) The court erred in allowing Dr. Calloway to testify, over the objection of the defendant's attorneys, as to whether he considered defendant sane or

insane, judging from an hypothetical case that had been asked him together with what he had learned by his examination of defendant in the jail about a week prior to the trial. *State v. Welsor*, 117 Mo. 580; *State v. Brown*, 1 Mo. App. 86. (5) The remark of Mr. Hull, of counsel for the state, was highly improper, and the evil of it was not remedied by any remark the court may have made. *Holliday v. Jackson*, 21 Mo. App. 669; *State v. Woolford*, 111 Mo. 255; *State v. Jackson*, 95 Mo. 652; *State v. Warford*, 106 Mo. 65; *State v. Lee*, 66 Mo. 167. (6) The verdict of the jury is plainly against the weight of the evidence. The testimony introduced by the prosecution in rebuttal did not attempt, either directly or by circumstances, to contradict the insanity history of defendant as given in the depositions read in his behalf. The expert testimony introduced by the prosecution corroborated that introduced by the defense in regard to all proper and pertinent matter.

*R. F. Walker*, attorney general, *Morton Jourdan*, assistant attorney general, and *D. M. Gibson*, prosecuting attorney, for the state.

(1) It is contended that the court committed reversible error in the giving of instructions numbers 5, 7, and 9 of its own motion. These instructions are in the usual form and correctly declare the law as applicable to a defense of this character. They are in accord with and in almost the exact language of those approved by this court in the case of *State v. Schaefer*, 116 Mo. 108. The doctrine announced in instruction number 11, asked by the defendant and refused by the court, is in conflict with the law of this state and with the rule as announced in the *Schaefer* case, *supra*. Instruction number 10, asked upon the part of defendant and re-

fused by the court, was properly refused for the proposition announced therein had been covered by instruction number 1, given by the court upon its own motion. (2) The court very properly permitted Dr. Calloway to give his opinion as to the sanity or insanity of the defendant, judging from the hypothetical case, together with what he had learned from his examination of the defendant. However, the matter will not be reviewed here for the reason that the objection to this question was that it was "incompetent and immaterial," which is equivalent to no reason at all, and this being true the defendant will not be heard to complain of the action of the court in passing upon this objection here. *State v. Nelson*, 132 Mo. 184; *State v. Adams*, 108 Mo. 208; *State v. Harlan*, 130 Mo. 381; *State v. Moore*, 117 Mo. 395; *State v. Smith*, 114 Mo. 406. (3) It is contended that this cause should be reversed because Mr. Hull of counsel for the state, during his argument to the jury, made use of this language: "I intend to show that these depositions are absolutely false; that the people who signed them did not know what they were signing. They were not properly certified; that is what I mean." That upon defendant objecting to this language, the court sustaining the objection said: "The depositions were properly in evidence, and should be considered by the jury." It is evident that whatever prejudice, if prejudice was committed by the attorney, was cured by the action of the court and the instruction to the jury to regard the depositions. The defendant simply objected to the statement, his objection was sustained. The court was not asked to reprimand counsel, nor was there any occasion for a reprimand. *State v. Fitzgerald*, 130 Mo. 407; *State v. Brandenberger*, 118 Mo. 187; *State v. Howard*, 118 Mo. 145; *State v. Dusenberry*, 112 Mo. 227; *State v. Graves*, 95 Mo. 516.

SHERWOOD, J.—The defendant, a negro, appeals to this court, having been convicted of murder in the first degree, he having killed his wife by repeated blows of an ax, the twenty-ninth of June, 1895. The indictment is in usual form and subject to no objection. The sole defense in this case was insanity.

The facts disclosed by the record are these in substance and effect: During the forenoon of the twenty-ninth day of June, 1895, the defendant and his wife and several small children were residing in Vernon county, Missouri. The wife of the defendant had that forenoon gone upon a visit somewhere in the neighborhood; the defendant had returned home just before the noon hour, found her absent and went to divers of the neighbors in search for her; of Maria Haley he inquired as to the whereabouts of his wife, and to her he said that his wife had put the dinner on and it had burned up; that he, the defendant, had strapped her, and that she, his wife, had run away. Defendant stated that he would never hit her again, but that the next time he would kill her. During the same morning he went to the home of Emma Merschel, inquiring for his wife, and stated to Emma Merschel he wanted his wife to come out of the house, that he intended to kill her. Soon after these threats defendant returned to his house; he saw his children in the yard and he called to them, "Come here daughter, you and Jimmie," and that his wife, addressing the children, said, "Go back, honey, go back." He went into the house where some trouble occurred, the exact nature of which the testimony does not show; but the next seen of the parties was the wife of the defendant attempting to release herself from the defendant at the door. She finally succeeded, and ran away a distance of several hundred yards, with the defendant in hot pursuit, armed with

State v. Wright.

an ax. His wife was screaming, "Murder, murder!" Defendant said, "G— d— you, I will kill you." He finally overtook her and struck her on the top of the head with an ax, knocked her to the ground, when he struck her three more licks upon the head; then with the edge of the ax struck her right arm, almost severing it from the body. Another one of the injuries inflicted by him was that one of her fingers was entirely cut off. Immediately after this brutal killing the defendant made his escape and was not apprehended for some time, nor until he had reached Ash Grove, Missouri.

Several witnesses, among whom are two physicians, testified that in their opinion the defendant was insane. It is also shown by depositions of witnesses taken on behalf of defendant that at one time he had been incarcerated in an insane asylum in Alabama.

In rebuttal, a number of reputable physicians, who had examined the defendant, testified that in their opinion he was not only sane at the time of the killing, but was sane at the time of the trial. This issue of fact as to the insanity of the defendant was submitted to the jury, and they found him sane at the time of the homicide.

The court of its own motion gave twelve instructions, and, at the instance of defendant, six, and refused eight more which defendant asked. These instructions will accompany this opinion and it is unnecessary to discuss them in detail.

1. As to instructions 5, 7, and 9 given by the court of its own motion, respecting which special exception is taken, it is sufficient to refer to our former rulings on the point of insanity whereby they are fully supported. *State v. Schaefer*, 116 Mo. 96, and cases cited.

2.   And, as to the eleventh instruction asked by defendant, it was properly refused as being in contravention of the ruling laid down in *Shaefer's* case and others there cited.    The burden is on a defendant who interposes a plea of insanity to sustain that defense to the reasonable satisfaction of the jury.    It is in the nature of a plea of confession and avoidance; it confesses the homicide, but denies the crime of it.    *State.v. Pagels*, 92 Mo. 300.

To the jurors was committed the duty of determining the matter of the plea of insanity, and as there was evidence to support the charge of murder it is not our province to interfere.

3.   Very properly Dr. Calloway was permitted to give his opinion respecting the sanity or insanity of defendant, having for a basis the hypothetical case, together with what he had learned from his examination of defendant.    If, however, this had not been so, no advantage could be taken of that fact, because defendant's objection to the admission of the evidence was absolutely worthless; i. e., "incompetent and immaterial," which counts for no objection at all.    *State v. Smith*, 114 Mo. 406;  *State v. Harlan*, 130 Mo. 381;  *State v. Moore*, 117 Mo. 395;  *State v. Adams*, 108 Mo. 208;  *State v. Nelson*, 132 Mo. 184.

4.   Contention is made that counsel for the state while arguing the cause to the jury, improperly made use of the following language:   "I intend to show that these depositions are absolutely false; that the people who signed them did not know what they were signing. They were not properly certified; that is what I mean." Upon defendant objecting to this language, the court, sustaining the objection, said:   "The depositions were properly in evidence and should be considered by the jury."

The objection raised by defendant was sustained

and no exception was saved to the language used by state's counsel. Besides, the court instructed the jury to regard the depositions, which was equivalent to a rebuke of the expressions used concerning them. Again, the use of such language, in order to be taken advantage of, required an exception, but there was and could have been none unless the court had refused to take some action asked by defendant, which refusal did not occur. If defendant had objected to the words used by the attorney for the prosecution and the court had overruled the objection and defendant had excepted to such overruling, and then saved the point in his motion for a new trial, then a case would have been presented for us to consider, whether, considering the circumstances, the exception was well taken; as it is, we have nothing before us, as defendant got all he asked. If he thought that a reprimand was deserved by counsel for using the objectionable language, he should have asked for it, and then, if refused, preserved the point in the proper manner.

5. For the reasons that the instructions given covered the entire case, there occurred no error in refusing those refused, even conceding their correctness, about which it is unnecessary to speak. Therefore judgment affirmed, and the sentence pronounced ordered to be executed. All concur.