STATE of Missouri, Respondent,

v.

Carl George SWINBURNE, Appellant.

No. 46829.

Supreme Court of Missouri,

En Banc.

May 11, 1959.

Modified in Court's Own Motion, Motion
for Rehearing and to Modify Opinion
Denied June 8, 1959.

Lester Watson, William J. Hough and Paul Watson, Clayton, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Sp. Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was convicted of statutory rape and sentenced to death. He has appealed in due course; he was represented at the trial, and is represented here, by able counsel. The sufficiency of the evidence for conviction is not questioned; hence, it will not be necessary to state the sordid facts in detail. It will be necessary, however, to give an outline of them, so that assertions of error may be intelligently discussed.

The evidence of the State fairly showed the facts now recited. Defendant, after spending several hours in a South St. Louis County tavern, and in the early hours of May 30, 1957, went to a home where the prosecutrix was "baby-sitting" with three children and procured entrance on the pretext of waiting for the father, whom he knew, and whom he had seen that evening working as a musician at the tavern. He had learned by inquiry of the mother of the children that a baby-sitter was at the home. The prosecutrix, whom we shall not otherwise designate, was 13 years old. Defendant first attempted to rape her in the home, after gagging her, but desisted and forced her out to his car, beat her severely with his fists when she resisted and screamed for help, and threatened her with a knife. Succeeding thus in getting her into his car, he took her to a secluded spot within the confines of Jefferson Barracks, raped her twice, and caused her to perform other acts of a highly revolting nature which constituted sodomy. The prosecutrix testified that she was made unconscious by a blow or blows in the struggle at the car, and that when she regained consciousness, at the spot to which he drove her, defendant was actually raping her on the seat of the car. After keeping the girl there for a very substantial period of time, defendant drove her back to a point about a block from her home. There he warned her not to tell her father or mother, stating that if she did he would read it in the papers and would come back and kill her.

Medical examination of the child revealed that there were discolorations and swellings on her face and jaw, discoloration and swelling inside her mouth, abrasions on her back, skinned areas on her back, buttocks and forearms, and some bleeding into both eyes. Also revealed were pinpoint hemorrhages over her face and scalp which indicated that the circulation around the neck had been partially obstructed as from being choked or suffocated, and that she had been unconscious; the bleeding into the eyes was "very likely" due to the same cause. Pelvic examination disclosed a fresh laceration of the hymen, with superficial skinned areas; the laceration extended into the lining of the vagina, and a discharge found in the vagina proved, upon test, to be male sperm or semen.

The sole defense made was that of asserted insanity. There was some evidence that defendant had suffered a head injury when he was a boy about 8; that he had, in recent years, shown a violent temper, and had upon occasions wholly failed to recall occurrences in periods just past or, as sometimes stated, suffered "blackouts." Since defendant did not testify, much of this information came to his examining doctors as case history. Two qualified psychiatrists had examined him at his counsels' request and testified. We need not analyze their testimony; it rested in

large part upon the supposed periods of "fugue" reaction in which he had no ensuing memory of events, and the effect thereof upon his ability to determine right from wrong. Their testimony was based also, to some extent, upon findings from a spinal puncture, and upon their conversations with him. The trial court submitted the issue of insanity and the jury necessarily found against the defendant on it.

Instruction No. 5 was the only instruction given on insanity. Insanity was the sole defense made. We set out the instruction in full, as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant, Carl George Swinburne, at the time of the commission of the act charged in the information, if you should find and believe beyond a reasonable doubt from the evidence herein that he did commit such act, and was so perverted, deranged, defective or deficient, in one or more of his mental and moral faculties as to cause him to be incapable at the time of understanding that such act was wrong and in violation of the law, you should acquit him upon the ground of insanity, but to hold the defendant criminally responsible it is only necessary that you should believe that the defendant at the time of the commission of the act charged against him, if you find and believe he did commit such act, had such a degree of mental capacity as to enable him to distinguish between right and wrong in reference to said act and to know that said act was criminal and wrong and would deserve punishment, then in law he had a criminal intent and was not so insane, mentally defective or deficient, as to be exempt from the responsibilities of such act.

"The law does not excuse unless the mental derangement or impairment is so great that it actually renders the person incapable at the time of its commission of distinguishing between right and wrong as to the particular act proved against such person. The insanity of the defendant may be proven either by positive and direct proof or by circumstantial evidence. As the law presumes the defendant innocent, the burden of proving him guilty rests with the State, and before you should convict him, his guilt must be established beyond a reasonable doubt. On the other hand, to entitle the defendant to a verdict of not guilty, solely by reason of his insanity, the law requires the defendant to prove it, not however, beyond a reasonable doubt, but only by the preponderance or greater weight of the evidence.

"From all this it follows that although you may believe and find that the defendant did commit the act charged against him, yet if you are reasonably satisfied by the greater weight or preponderance of the evidence you further find that at the time he did it he was in such an insane, deranged, defective or deficient condition of mind that he did not know he was doing wrong, and did not comprehend the nature and character of the act, then such act was not, in law or in fact, malicious or felonious, and you ought to acquit him on the grounds of insanity, and by your verdict so say.

"By the term 'greater weight or preponderance of the evidence' as is used in the foregoing instruction, is meant evidence which is more convincing and worthy of belief than that offered in opposition thereto."

It is obvious that the first paragraph, when read literally, requires that insanity be proven beyond a reasonable doubt; this result was apparently caused by inserting the word "and" in the fifth line of the instruction (as it appears here), while attempting to copy the first paragraph of the instruction shown in the case of State v. Barton, 363 Mo. 991, 255 S.W. 2d 752, 754 (second appeal). In that case the court reaffirmed the proposition that the burden of proving insanity by a preponderance of the evidence rests on the defendant. There the requirement of proof "beyond a reasonable doubt" appeared as a separate clause confined solely to proof of the commission of the act charged,

whereas here the conjunctive "and" joins that element with the submitted hypothesis that defendant was so perverted, etc., as to be incapable of understanding that the act was wrong; the remainder of the paragraph in nowise lessens the burden thus imposed. Defense counsel insist that the additional part of the paragraph improperly reduces the State's burden, but we may pass that argument. The second paragraph, standing alone, is good, but a conflict exists between it and the first paragraph.

■■ In the third paragraph the jury is told that "if you are reasonably satisfied by the greater weight or preponderance of the evidence" that defendant was insane, it should acquit him. This paragraph is apparently an adaption from the third paragraph of the same Barton instruction but the phrase just quoted above has been inserted in lieu of the words "from the evidence." It seems very strange that this should be done in view of the express condemnation of the words "satisfied," "reasonably satisfied" and "reasonable satisfaction," when used in a similar connection in the first Barton case (Mo., 236 S.W.2d 596), and the reversal of that conviction because thereof. The exact meaning of that case is somewhat obscure, since five Judges concurred in the result and two dissented; we construe it, however, as condemning the terms or phrases referred to above. If we have misconstrued that case, then we condemn those phrases now, as applied to an affirmative defense. At the second Barton trial the instruction omitted all such references, yet the present instruction (almost a copy except for the two inserts which we have noted), reinserts the requirement "reasonably satisfied." We recognize that until the first Barton case was decided here similar requirements had been approved (State v. Sapp, 356 Mo. 705, 203 S.W.2d 425; State v. Scott, 359 Mo. 631, 223 S.W.2d 453; State v. Wright, 134 Mo. 404, 35 S.W. 1145, 1149; State v. Porter, 213 Mo. 43, 111 S.W. 529, 532; State v. Douglas, 312 Mo. 373, 278 S.W. 1016,

1027), usually with the accompanying phrase "by the weight and preponderance of the evidence," or similar words. We recognize also that the terms condemned in the first Barton case (236 S.W.2d 596) were used alone, the opinion stating, loc. cit. 601: " * * * We realize that the propriety of coupling these terms with 'the preponderance or greater weight of the evidence' is not for determination in this case, but believe that this expression of opinion may be helpful to trial judges and members of the bar." In that opinion (236 S.W.2d loc. cit. 599, 600) it was held that the requirement of "satisfaction" or "reasonable satisfaction" denotes a degree of proof substantially greater than a preponderance of the evidence; we agree. Of course, the "preponderance of the evidence" is a variable term, and it may, we suppose, be so great in some cases as to reach almost a unanimity of the evidence. Considered thus, the two terms when used together are not irreconcilable, but the term "satisfaction" (or "reasonable satisfaction") is nevertheless controlling. We hold that the phrase here used was erroneous as increasing the legal burden resting on defendant to prove insanity by the preponderance of the evidence. See also: State v. Eaves, 362 Mo. 670, 243 S.W.2d 129; State v. Johnson, Mo., 267 S.W.2d 642, 44 A.L.R.2d 973. We note by analogy that this court has recently held erroneous a requirement of proof in a civil case "by the preponderance, that is, the greater weight of the credible evidence, to the reasonable satisfaction of the jury." Highfill v. Brown, Mo., 320 S.W.2d 493, 497, citing recent cases condemning similar instructions. We hold the present instruction to be reversibly erroneous because of the combination of the two errors just noted.

■ If we were permitted to speculate upon what effect this instruction may actually have had on the jury, our conclusion might be different. In the light of this gruesome record it may have played no part. But we cannot so speculate; we may not say that this instruction did not

confuse and mislead. It was erroneous as given, and we hold it to be prejudicial. It is most unfortunate that the prosecutrix, her family, and the witnesses must be put through this ordeal again.

In view of another trial, we may expedite matters by considering those assertions of error which are reasonably certain to arise again. It is strongly urged that the court erroneously permitted testimony in rebuttal from two physicians who had examined defendant on September 11, 1957, at the request of the Prosecuting Attorney, to determine his mental condition. These doctors, in effect, testified that defendant was sane at the time of the crime and at the time of their examination. The results of this examination will probably be material on another trial because the time of the examination was comparatively soon after the date of the crime. The circumstances of the examination are not too clearly shown in the record, coming in part from colloquy between court and counsel. It fairly appears, however, that defense counsel had procured an order (formal or informal), on motion, for defendant's examination at the County Hospital by physicians of their choice; that they told the sheriff to produce the defendant at the time and place in question for an examination; that the Prosecutor's office notified two other physicians to be present at that time for the purpose of observing or participating in the examination; there is much dispute as to whether this latter phase was to be accomplished by agreement of counsel. Be that as it may, the defendant was present under court order and at the request of defendant's counsel, and defendant's counsel had notified the sheriff, who, in turn, called the Prosecutor for confirmation. Defendant's chosen physician or physicians did not show up and the State's physicians proceeded with their examination which consisted solely of conversing with the defendant, during the period between 10:00 a. m. and noon, when defendant was taken back to jail. Counsel for defendant say that they instructed the sheriff to keep defendant there all day, as their doctors were uncertain when they could arrive, and that the sheriff violated their instructions, but said later that "they didn't have the deputies." The evidence is that defendant conversed freely with the State's physicians, that no compulsion whatever was used, and no physical tests were made. Defendant was handcuffed when brought in, but the handcuffs were removed. Defendant's doctors later made their own examinations very fully, with such tests and X rays as were desired.

■ The objections, as originally made and preserved here, are that this examination was made without consent while defendant was in custody, and that it constituted a violation of his constitutional immunity against being compelled to testify. Defendant relies upon the Missouri cases of State v. Horton, 247 Mo. 657, 153 S.W. 1051, and State v. Matsinger, Mo., 180 S.W. 856, and also State v. Height, 117 Iowa 650, 91 N.W. 935, 59 L.R.A. 437. To these we might add the case of State v. Newcomb, 220 Mo. 54, 119 S.W. 405. All of these Missouri cases were distinguished in the case of State v. Cochran, 356 Mo. 778, 203 S.W.2d 707, loc. cit. 711, where the court said: " * * * They were all rape cases in which the defendant was examined without his consent to determine whether he had a venereal disease, which fact tended to connect him with the crime. Here the examination was to determine defendant's sanity, which he himself put in issue and upon which issue he offered medical testimony. * * * When a defendant thus puts his sanity in issue, he waives all privilege either under the physician privilege statute, Section 1895, this and other references are to R.S.1939 and Mo.R.S.A. [V.A.M.S. § 491.060], or under the self-incrimination section, Sec. 19, Art. I, of the Constitution, Mo.R.S.A. [V.A.M.S.], to exclude testimony of any doctors who have examined him for this purpose. See People v. Esposito, 287 N.Y. 389, 39 N.E. 2d 925, 142 A.L.R. 956; Ingles v. People, 92 Colo. 518, 22 P.2d 1109; see also 14 Am. Jur. 879, Sec. 160; 22 C.J.S. Criminal Law

§ 651, p. 998. Defendant obtained the trial court's ruling excluding all doctors, who examined him in custody, from testifying as to his sanity, which was more favorable than he was entitled to have. * * *" And see the earlier case of State v. Church, 199 Mo. 605, 98 S.W. 16. We need not discuss all the pros and cons of those cases involving physical examinations and tests which may tend to prove the actual commission of the crime. State v. Sexton, 147 Mo. 89, 48 S.W. 452; 164 A.L.R. 968, note. We prefer not to base our decision here upon the supposition of consent, although the facts might justify it. Nor is it necessary to hold here that the constitutional immunity merely prohibits testimonial compulsion, as has been held in various cases. 25 A.L.R. 2d 1408 et seq.; State v. Myers, 220 S.C. 309, 67 S.E.2d 506, 32 A.L.R.2d 430; 22 C.J.S. Criminal Law § 651, p. 998; Commonwealth v. Musto, 348 Pa. 300, 35 A.2d 307. We hold that the evidence was admissible upon the broad ground that where a defendant has raised, or it reasonably appears that he will raise, a defense of insanity, he waives his privilege under our provisions against self incrimination (Art. 1, § 19, Constitution, V.A.M.S.) to the extent that physicians for the State may properly examine him for sanity (and testify) so long, at least, as no compulsion is used. As said in State v. Myers, supra (67 S.E. 2d loc. cit. 508): " * * * It would be an anomaly to say that he may advance such a claim and have himself examined by experts of his own choosing and then invoke the constitutional guaranties now asserted for the purpose of preventing a similar examination by the authorities of the State Hospital. * * * Here the accused is not required to undergo a mental examination for the purpose of establishing the fact that he committed the crime but solely to determine his mental responsibility at the time the alleged crime was committed." In various states this right is granted by statute. State v. Myers, supra; Hunt v. State, 248 Ala. 217, 27 So.2d 186. However, the constitutional question there and here is the same. The evidence of the State's physicians was used in rebuttal and only after defendant had adduced lengthy medical testimony to establish his supposed insanity. The record fairly indicated at the time of this examination that a defense of insanity was immediately forthcoming. The evidence was properly received. Our present ruling is consonant with our prior authorities, with the weight of authority elsewhere, and with ordinary logic and good morals.

■ Error is also asserted in permitting the Prosecutor to ask each prospective juror substantially this question: "Do you have any moral, conscious (conscientious) or religious scruple which would make it impossible for you to bring in a verdict of death if you were convinced, beyond a reasonable doubt, that such a verdict is fair and just?" Various members of the panel were disqualified for cause on this question (see § 546.130, RSMo 1949, V.A.M.S.). Counsel argue that the repetition of this question tended to make the jurors believe that it was their duty to assess the death penalty upon a finding of guilt, and that it was tantamount to a "pledge" to that end. We do not so construe the interrogation. In State v. Pinkston, 336 Mo. 614, 79 S.W. 2d 1046, relied upon by defendant, the prospective jurors were asked, in effect, whether they *would* vote to assess the death penalty if the evidence warranted it. The court held the interrogation to be improper, stating that counsel may not thus require jurors to speculate upon what they *would do* upon contingencies which might arise; but it further held that an opinion of a juror, arising from whatever cause, which would *preclude* the death penalty in a capital case was a disqualification, and that the examination should have been " * * * limited to ascertaining whether the juror had such an opinion as would preclude him from returning a verdict with the death penalty * * *." Neither that case nor the case of State v. Thursby, Mo., 245 S.W. 2d 859, also relied on, establishes error in the questioning here. In State v. Ramsey, Banc, 355 Mo. 720, 197 S.W.2d 949, questions very similar to the one here were asked of the prospective jurors; upon ob-

jections which were also similar to those here, the court held that the questions were proper for the purpose of finding out whether the jurors were disqualified under the statute. See, also, State v. Heickert, Mo., 217 S.W.2d 561. We note also that the manner of conducting the voir dire lies largely in the discretion of the trial court. State v. Pinkston, supra. The point is disallowed.

◼◼ We consider together the points involving the display of photographs of the prosecutrix and of the panties worn by her. The argument here is that none of these tended to connect defendant with the crime or identify the complainant, and that the only purpose was prejudice. As to the latter exhibit, the point is added that it was improperly offered in rebuttal. Motions for mistrial were made at various stages. Counsel are in error in stating here that these exhibits were not introduced in evidence. They were all identified, offered and received in evidence. The suggestion that the pictures were retouched is in nowise borne out by the record, and should not have been made without substantiation. The photographs of the girl were taken at police headquarters about 36 hours after the crime, and shortly after her release from the hospital; they show swellings, abrasions and marks of various kinds, and what appears to be bleeding into both eyes. They were corroboratory of the girl's testimony of defendant's acts and of her injuries. Essentially, this whole series of acts constituted one continuous transaction. There could be no serious question that evidence of the beating and physical mistreatment was admissible as constituting part of the crime itself, whether we call it "res gestae" or not. A defendant cannot expect to exclude acts of brutality perpetrated in the commission of a crime and performed as the very means of accomplishing it. It has been held that although injuries or circumstances may have been fully described orally, photographs are also admissible, in the court's discretion, where they corroborate and tend to establish the existing conditions, for "pictures

give a much clearer impression of many things than any oral description * * *," State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 654. See, also, the cases there cited and State v. Moore, Mo., 303 S.W.2d 60, 66. We see no material distinction between the admissibility of photographs which show relative positions of bodies and objects or other physical facts, and those which show physical characteristics and injuries. The ultimate question is whether the photographs throw light upon the material issues. These photographs were not particularly gruesome, except when considered with the evidence. But, as said in Moore, supra, loc. cit. 66: "If the photographic views are shocking and horrible it is because the crime is one of that sort, whether described in words or pictures. * * *" The photographs were properly admitted.

◼ As to the clothing, the cases generally establish the rule that it is admissible if it tends to prove or disprove some material fact in issue, such as identity, the nature or location of wounds, or the connection of the defendant with the crime, otherwise not. State v. Long, 336 Mo. 630, 80 S.W.2d 154, 160; State v. Clough, 327 Mo. 700, 38 S.W.2d 36; State v. Rennison, 306 Mo. 473, 267 S.W. 850; State v. Creed, 299 Mo. 307, 252 S.W. 678. As said in State v. Porter, 276 Mo. 387, 207 S.W. 774, 777: "* * * Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue. * * * Necessarily, the admission of this character of testimony must, within the limits stated, be left largely to the discretion of the trial court * * *; and only when it appears that this discretion has been abused will we interfere therewith." Counsel here say that this exhibit was "* * * not used to connect the defendant with the crime or to prove the identity of the complainant or show the position of wounds to rebut a defense. * * *" Like the photographs, there is

nothing particularly gruesome about this exhibit, except when considered with all the evidence. It is simply a very badly torn pair of little girl's panties. We see no bloodstains, as mentioned by counsel. In State v. Ward, 337 Mo. 425, 85 S.W.2d 1, 6, a rape case, it was held that it was not error to permit the State "to show the condition of the girls' clothing following the attack." This exact question was ruled against the defendant in State v. Greer, Mo., 313 S.W.2d 711, 713, a statutory rape case, the court saying that the exhibit "tended to support the State's case." See, also, State v. Brannan, 206 Mo. 636, 105 S.W. 602, 603, where the court said: "It has been frequently held that articles of clothing worn by a prosecuting witness at the time of the commission of an offense of this character are admissible in evidence. State v. Murphy, 118 Mo. 7, 25 S.W. 95; State v. Duffy, 124 Mo. 1, 27 S.W. 358. * * *" The exhibit corroborated certain material features of the testimony of the prosecutrix. We need not now consider the objection to the timeliness of this offer.

Defendant also objected vigorously to all evidence of the criminal acts committed after the consummation of the initial rape. Sundry motions to discharge the jury were based on the reception of this evidence. These objections were preserved in the motion for new trial and are urged here in one of the points preserved, but without argument. We need spend little time on this point. The evidence was admissible as evidence of interrelated acts all constituting one continuous transaction, and of a "common scheme" to violate this girl's person in almost every imaginable way. See State v. Wilson, Mo., 320 S.W.2d 525; State v. Scown, Mo., 312 S.W.2d 782; State v. Saussele, Mo., 265 S.W.2d 290, 296; State v. Harrison, Mo., 285 S.W. 83, 86. In fact, these other acts constituted a part of the res gestae of the crime charged. And see, as specifically applicable here, State v. Katz, 266 Mo. 493, 181 S.W. 425; State v. Pfeifer, 267 Mo. 23, 183 S.W. 337,

339; State v. Ward, 337 Mo. 425, 85 S.W. 2d 1, 6. There is no merit in this point.

The objections made here to the giving of other instructions may be considered by the State before another trial. However, we note the following: Instructions 1 and 3 might well have been combined to avoid any complaint of undue repetition; Instruction 8 on intoxication was justified by the evidence, though such was not advanced as an affirmative defense. We need not consider the refusal of defendant's proffered instructions. We take occasion here to say that the trial court most conscientiously and assiduously sought to protect the rights of this defendant and to give him a fair trial. The other points made will not necessarily arise upon another trial and it would be improper to consider them here.

The judgment will be reversed and the cause remanded for a new trial. It is so ordered.

All concur except DALTON J., and HYDE, J., who dissents.