CHARLES DOUGHERTY, By Next Friend, RICH-ARD DOUGHERTY, Appellant, v. CITY OF ST. LOUIS et al.

**Division One, June 28, 1913.**

1. **OBSTRUCTION OF HIGHWAY: Storing Lumber: Reasonable Length of Time.** The owners of an inclosed lot, used for storing second-hand lumber, have no right to store such lumber on a strip of ground between the inclosing fence and the sidewalk. The doctrine of the reasonable temporary obstruction of public streets by abutting property-owners, for instance, by loading and unloading manufactures from a factory, or in

building new or repairing old buildings, has no application to such a case; and in a suit for injuries to a child caused by the falling of a pile of lumber so stored in the public street, an instruction embodying the idea that the abutting property-owner had a lawful right to obstruct the street for a reasonable length of time, and that both he and the city became liable only after the pile of lumber had remained in the street more than a reasonable length of time, was error.

2. ————: ————: **Notice.** The act of the abutting property-owner in storing lumber in a public street is unauthorized, and he is not entitled to notice that the obstruction was dangerous to children playing about it. But in order to hold the city liable for injuries to a child caused by the falling of the pile of lumber, it must be shown that the city had notice of its existence in the street, or that it had remained in the street sufficiently long enough to constitute notice to it or its officers; but the court should not tell the jury that the fact that the lumber remained in the street "about three days" in law constituted notice to the city.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer,* Judge.

REVERSED AND REMANDED.

*O. F. Karbe* and *S. C. Rogers* for appellant.

(1) The court erred in refusing to give instruction numbered one, offered by plaintiff, and in changing and modifying same and giving to the jury in its changed and modified form. The court erred in giving instructions numbered five, six, seven, eight, nine, ten and eleven, offered by defendants Riechers. Perrigo v. St. Louis, 185 Mo. 274; Commonwealth v. McNaugher, 131 Pa. St. 55; 15 Am. & Eng. Ency. Law (2 Ed.) 444, 492-3; Coffey v. Carthage, 186 Mo. 573; Kossman v. St. Louis, 153 Mo. 293; Bassett v. St. Joseph, 53 Mo. 290; Brennan v. St. Louis, 92 Mo. 482; Hull v. Kansas City, 54 Mo. 598; Troll v. Cement Co., 160 Mo. App. 507; Nagel v. Railroad, 75 Mo. 653; Burger v. Railroad, 112 Mo. 238; Sydnor v. Arnold, 122 Ky. 557; Barrows on Negligence, p. 18; Heberling v.

Warrensburg, 204 Mo. 613; Russell v. Columbia, 74 Mo. 494; Barr v. Kansas City, 105 Mo. 560; Graney v. St. Louis, 141 Mo. 180; Maus v. Springfield, 101 Mo. 613; Chilton v. St. Joseph, 143 Mo. 192; Straub v. St. Louis, 175 Mo. 413; Busse v. Rogers, 64 L. R. A. 183, 120 Wis. 443; King v. Troy, 104 N. Y. 344; Rachmel v. Clark, 205 Pa. St. 314, 62 L. R. A. 959; Buttron v. Bridell, 228 Mo. 622; Fullerton v. Fordyce, 121 Mo. 1; Roberts v. Railroad, 153 Mo. App. 638.

*William E. Baird* and *Robert Burkham* for respondent City of St. Louis.

*Muench, Walther & Muench* for other respondents.

(1) An abutting owner has the right to use a part of the highways for the receiving of freight, or the temporary deposit of articles connected with his business, so long as such temporary use does not unreasonably interfere with travel. Gerdes v. Foundry Co., 124 Mo. 347; Watson v. Railroad, 69 Mo. App. 548; McRee v. Peters, 142 Mo. App. 286; Davis v. Thompson, 134 Mo. App. 13; Dillon on Municipal Corporations (4 Ed.), sec. 730. (2) There is a difference between the paved and unpaved portions of a sidewalk, with respect to the use by the abutting owner and the public, respectively. Bassett v. St. Joseph, 53 Mo. 303; Fritz v. Kansas City, 84 Mo. 632; Craig v. Sedalia, 63 Mo. 417; Brown v. Glasgow, 57 Mo. 156; Kling v. Kansas City, 27 Mo. App. 231. (3) While the occupancy of a sidewalk by an abutting owner must not extend beyond a reasonable space of time, what is a reasonable time is to be determined by the circumstances of each case and is a question of fact for the jury. Hesselbach v. St. Louis, 179 Mo. 523; Loth v. Theater Co., 197 Mo. 328; Gerdes v. Foundry Co., 124 Mo. 355. (4) The pile of lumber in question, placed there by the abutting owners under the circum-

stances shown in evidence, was not a nuisance *"per se."* Hesselbach v. St. Louis, 179 Mo. 505; Gerdes v. Foundry Co., 124 Mo. 347; Seibert v. Railroad, 188 Mo. 657; Loth v. Theatre Co., 197 Mo. 328; O'Hara v. Gas Light Co., 244 Mo. 395. (5) The negligence declared upon in plaintiff's petition was the alleged careless manner of piling the lumber and plaintiff could not therefore recover upon any other ground. The case must be disposed of in this court upon the theory upon which it was tried below. Hesselbach v. St. Louis, 179 Mo. 524; O'Hara v. Gas Light Co., 244 Mo. 395. (6) A pile of lumber could not be considered as a dangerous contrivance which is tempting to children, and the "turn-table" cases do not apply. O'Hara v. Gas Light Co., 244 Mo. 395; Kelly v. Benas, 217 Mo. 1; Friedman v. Snare, 71 N. J. L. 605; Powers v. Bridge Co., 89 N. Y. Supp. 1030; Witte v. Stifel, 126 Mo. 295; Stone v. Railroad, 96 N. Y. Supp. 810; Kreiner v. Straubmueller, 30 Pa. Sup. Ct. 609; Railroad v. Cline, 111 Ill. App. 416. And the plaintiff in going upon the lumber was guilty of trespassing. Witte v. Stifel, 126 Mo. 295; Schmidt v. K. C. Dist. Co., 90 Mo. 284; Moran v. Pullman Co., 134 Mo. 641. "The turn-table cases are anomalous, and it is the practice of the courts to carry their doctrine no further than the previous conditions compel." O'Hara v. Gas Light Co., 244 Mo. 407; Witte v. Stifel, 126 Mo. 295; Barney v. Railroad, 126 Mo. 372.

GRAVES, J.—Charles Dougherty, a boy of ten years, sues through his next friend, to recover from defendants for personal injuries received by him when a pile of lumber in the street fell upon him. The suit was against the city of St. Louis, the two co-partners in the business firm of J. P. Riechers & Son, and the Dimple Realty Company. The latter was dismissed by the trial court upon a demurrer to the testimony and it is conceded in the briefs here that such ruling

was correct. Upon trial a jury returned a verdict for the other defendants and from that verdict and the judgment entered thereon the plaintiff has appealed. The negligence charged is thus stated in the petition:

"Plaintiff for cause of action states that on the eleventh day of February, 1909, St. Louis avenue in said city of St. Louis and the sidewalks pertaining thereto constituted an open public highway of said city; that the premises heretofore mentioned abutted on said public highway, to-wit, St. Louis avenue, and were surrounded and enclosed by a board fence; that on the day and date above mentioned, and for several days prior thereto, defendants J. P. Riechers, Charles P. Riechers and the Dimple Realty Company owned and maintained a pile of heavy lumber on the St. Louis avenue side of said premises, and on the open public highway, said pile of lumber being about fifteen feet in length, about five feet wide and about eight feet high, and extended outwardly from said fence a distance of about five feet on the public highway; that it was the duty of said city of St. Louis to keep its sidewalks free from nuisances and dangerous obstructions and in reasonably safe condition to persons lawfully on said street; that the fact of said lumber being on said sidewalk was known to the defendant, city of St. Louis, and its agents and servants, or could by the exercise of ordinary care have been known to said defendant city of St. Louis; that said lumber was negligently, carelessly, loosely and improperly piled, in this, to-wit, that defendants failed to brace said lumber with proper ties or cross-pieces placed between the boards constituting said pile of lumber, and that said lumber was not guarded so as to warn persons who might come near or in contact with same of their danger, and that said pile of lumber was dangerous to persons who might come near or in contact therewith."

The petition then alleges that plaintiff and other boys were playing in, upon and around such pile of lumber, when a portion thereof fell upon him and injured him. Damages are asked in the sum of $15,000. The two individual defendants J. P. and C. P. Riechers answer (1) by a general denial and (2) a plea of contributory negligence. The answer of the city is to like effect. The answer of the Realty Company need not be considered. Complaint is made of the giving and refusing of instructions, the admission of improper evidence and the refusing to admit proper evidence. Incident facts will be detailed in the course of the opinion in connection with the points made.

I. Plaintiff asked a general instruction which the court refused to give, and this is one of the complaints urged here. The instruction as asked reads:

"The court instructs the jury that if they believe and find from the evidence that the defendants, J. P. Riechers and Charles P. Riechers, placed the pile of lumber mentioned in the evidence on the sidewalk on St. Louis avenue, near Leffingwell avenue, prior to the 11th day of February, 1909, or owned same and allowed it to be done, and that they allowed it to remain there for about three days, and that the defendant, city of St. Louis, knew the same was so placed on said sidewalk, or might by the exercise of reasonable care have known through its officers and agents that same was there; and that the defendants, J. P. Riechers and Charles P. Riechers, and the city of St. Louis, knew or by the exercise of reasonable care could have known that same was improperly piled and unsafe and dangerous to children lawfully playing on or around same, and that said lumber was carelessly, negligently, loosely and improperly piled by reason of not being braced with proper ties or crosspieces placed between the boards constituting said pile of lumber, and that said lumber was unguarded, and that while said lum-

ber was in said condition on said sidewalk, at the place mentioned in the evidence on or about the 11th day of February, 1909, the front tier of said lumber fell and injured Charles Dougherty, plaintiff herein, while he was playing on, near, at or around same, and that the said plaintiff was at the time he was injured in the exercise of ordinary care, then you will find your verdict in favor of plaintiff."

This instruction the court modified and gave. The modified instruction reads:

"The court instructs the jury that if they believe and find from the evidence that said St. Louis avenue was, on the 11th day of February, 1909, an open public highway, that the defendants, J. P. Riechers and Charles P. Riechers, placed the pile of lumber mentioned in the evidence on the sidewalk on St. Louis avenue, near Leffingwell avenue, prior to the 11th day of February, 1909, or owned same and allowed it to be done, and that they allowed it to remain there for an unreasonable length of time, and that the defendant city of St. Louis knew the same was so placed on said sidewalk, or might, by the exercise of reasonable care have known through its officers and agents that same was there; and that the defendants, J. P. Riechers and Charles P. Riechers, and the city of St. Louis, knew or by the exercise of reasonable care could have known the same was improperly piled and unsafe and dangerous to children lawfully playing on or around same, and that said lumber was carelessly, negligently, loosely and improperly piled by reason of not being braced with proper ties or crosspieces placed between the boards constituting said pile of lumber, and that said lumber was unguarded, and that while said lumber was in said condition on said sidewalk, at the place mentioned in the evidence on or about the 11th day of February, 1909, the front tier of said lumber fell and injured Charles Dougherty, plaintiff herein, while he was playing on, near, at or around same, and that the

said plaintiff was at the time he was injured in the exercise of ordinary care, then, you will find your verdict in favor of plaintiff.''

Some pertinent facts should be first stated. The individual defendants were the lessees of the vacant adjoining lot, and had it fenced, and for years had used it for the purpose of storing second-hand lumber and other building material. On St. Louis avenue the space between the board fence surrounding their lot and the curb line of the street was something like twenty feet, the outside portion having a sidewalk upon it. The lumber pile was on the inside portion, and not on the sidewalk portion. The evidence sharply conflicts as to whether the lumber was safely or negligently piled up. A jury could well find either way upon this question. Likewise the evidence sharply conflicts as to how long this particular pile of lumber had been in the street at this point. One witness for defendants says: ''I have known Riechers for eight years. The lumber had been there five or six days. I took more interest in this particular case because I knew that these boys would get hurt if they would keep on playing around that lumber pile.''

Other evidence places the time much shorter, but it is sufficient for us to say that there is a conflict in the evidence, with substantial evidence both ways. The theory of the defense is largely founded upon the testimony of Charles P. Riechers. This is short, as condensed in the abstract, and we quote both sides of it, thus:

''Direct Examination, by Mr. Muench:

''My name is Charles Riechers. I am in the general construction business with my father, J. P. Riechers & Son. Have been about twenty-five years. We are occupying the lot at the corner of Leffingwell and St. Louis avenues for storing old building material. The lot is inclosed by a fence. Part of the sidewalk

is paved and part unpaved. From the fence to the curb is about twenty-five feet and six inches. I have heard the testimony with reference to the pile of lumber which was outside of the fence, on the St. Louis avenue side of the lot. That lumber was moved from the southwest corner of Grand and Dodier street. We were wrecking a building there. This lumber came out of that building. I had all the nails drawn out of the lumber, perfectly clean, no rubbish sticking to it, lath nails nor pieces of lath remaining, or anything else. It was absolutely clean. It was white pine joists, 2x6, 2x8, 2x10. I saw the lumber as it was piled and after it was piled. Under the bottom of the pile were two pieces of 4x6, laid on an incline toward the fence, by having two bricks under the outer edge of it, and on this we proceeded to pile the lumber about five feet wide up against the fence. The lumber leaned against the fence. The front of the pile was leaning towards the fence northwardly from twelve to fifteen inches. That was brought about by the pile being five feet at the bottom and from three and one-half to three and three-fourths feet at the top. It was against the fence all the way up. I had last seen this pile of lumber before the accident, about two o'clock in the afternoon. It certainly looked good and safe to me.

"Q. Why was it, Mr. Riechers, that the lumber was not piled in the yard?

"Objected to by Mr. Rosenthal.

"Mr. Muench: The purpose of this question is simply to show that at that particular time there was not room inside the fence to store those boards, and for that reason they were placed just outside the fence. I expect to follow that up by other evidence.

"The Court: Well, he may answer that question upon the statement that you expect to follow it with further proof. To which ruling plaintiff then and there duly excepted.

"A. On account of a lot of material accumulating on the inside, and we had to remove this stuff from Grand and Dodier in order to make room for other old material that was to be left there, to be reused in the construction of the new building, consequently by not having room on the inside of this fence we piled the lumber out against the outside of the fence, and just as quick as we could get these nails and stuff out we hauled it down, *and then after we had room made in the lot we were going to proceed to move that stuff in the lot.* This particular pile of lumber was laid up one plank on top of the other.

"Q. About how long would it have taken one man to remove that lumber from the outside of the fence to the inside?

"Objected to as incompetent and immaterial; objection overruled, to which ruling of the court the plaintiff then and there duly excepted.

"A. It might have taken a day and one-half. At two o'clock in the afternoon of the 11th, the day of the accident, the pile was solid. About 11 o'clock that night I went by there and I saw some joists scattered, but I did not know that anything had happened. I just thought the boys had been playing. The fence is seven feet high exactly, and the lumber was piled within six inches of the top of it. After the accident happened the braces were still under the pile.

"Cross-Examination by Mr. Rosenthal:

"The lumber had been there possibly a day and a quarter. I am not positive whether it was put there on the same day or not, but it was put there on the 10th or 11th, which was Wednesday or Thursday. There had been some lumber out there about six or seven days before. On the 11th of February, 1909, I had timber piled on the Leffingwell side of this property. They were there off and on for quite a number of years. This lumber was piled about five foot wide at the bottom, graduating up to the top so that it was

narrower on the top than it was on the bottom. There were different sizes, 2x6, 2x8, 2x10. It was timber of different dimensions and we did not pull all of the 2x8 together, nor the 2x6, nor the 2x10. We piled across, one on top of the other, straight from the fence out.

"Q. Explain how the lumber was piled twelve or fifteen inches narrower at the top than at the bottom and still have one of these planks lay right on top of the other, as you indicated? A. Well, it consisted of various widths, 2x6, 2x8, 2x10. If the pile had consisted of only 2x10's, it would naturally mean that the front of the pile would have remained straight, and we would have got as many tiers on the top as we get on the bottom, but by having different widths we incline those piles in from twelve to fifteen inches by putting 2x8's, 2x6's, and 2x10's together crossways.

"Q. Well, I understood you to say you just took the lumber and unloaded it without any regard to the size and placed it together? A. *Well, because the pile was going to be moved to the inside of the lot in a few days. That's the reason it was piled so as not to keep it separate.*

"There had been some lumber piled there about six or eight days before. There were no ties or crosspieces or braces between the planks of the pile. There wasn't anything to warn anybody away from the pile or that there was any danger. The lumber was about twelve and one-half feet long. The front tier was practically the same as a pair of stairs, leaning towards the fence from the bottom to the top, twelve or fifteen inches. We didn't make any tiers. The back was close against the fence and the bottom of the pile was close against the fence. The fence is about four inches out of plum.

"Re-direct Examination, by Mr. Muench:

"The last lumber was piled there on the morning of the 10th, or before 10 o'clock on the morning of the

11th of February. The 2x10's were the last piled on the pile. There has never been any pavement along the west side of that fence along the lot.''

We have underscored all the evidence upon which one theory of the given instruction supra, was predicated. This testimony is flatly contradicted both as to the manner in which the lumber was piled up, as well as to the length of time it had been there. This sufficiently outlines the additional facts for a discussion of these two instructions.

It will be noticed that the instruction given by the court precludes the right of the plaintiff to recover, unless the jury found that the pile of lumber had been in the street ''for an unreasonable length of time.'' In other words, the instruction seems to be predicated on the idea that the Riechers had the lawful right to obstruct this street for a reasonable length of time, and they and the city only became liable for the obstruction after it had remained there more than a reasonable length of time. Under the facts of this case this instruction is vicious. Under certain circumstances abutting property-owners have the right to reasonably obstruct a street in the conduct of their business, and of this class of cases the case of Gerdes v. Iron and Foundry Co., 124 Mo. l. c. 353 et seq., states the very limit of the rule. In that case it is said:

''The general rule which has been repeatedly declared by this court is that municipal corporations are bound to keep their streets and highways in a proper state of repair and free from obstructions so that they will be reasonably safe for travel; and if, having notice of defects or obstructions, they neglect to repair or remove them they will be liable for all injuries, provided that he who received the injury was, himself at the time, in the exercise of due care. [Smith v. St. Joseph, 45 Mo. 449; Flynn v. Neosho, 114 Mo. 572, and cases cited.]

"There is a well-recognized qualification to this strict rule which is declared by Judge DILLON in this language: 'But it is not every obstruction, irrespective of its character or purpose, that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations and restrictions. The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in a temporary obstruction to the right of public transit. . . .Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to or limitations of it. They can be justified when, and only so long as, they are reasonably necessary. There need be no absolute necessity: it suffices that the necessity is a reasonable one.' [2 Dillon on Mun. Corp. (4 Ed.), sec. 730 and cases cited; Stephens v. Macon, 83 Mo. 345; Welsh v. Wilson, 101 N. Y. 256.]

"There can be no doubt, under this obviously just qualification, that the manufacturing company had the right to make reasonable use of these streets for the deposit of their manufactured goods, for the purpose of loading and unloading them, though not directly authorized by an ordinance of the city. But it had no right to make a permanent use of the street for storing its property, or to make such temporary use as would unreasonably interfere with travel. The reasonableness of the use should be measured by the character of the articles to be handled."

Other cases are cited by the respondents, but this case sufficiently illustrates the doctrine under which they attempt to sustain this instruction. The trouble is not with the doctrine of a reasonable temporary use of the streets by abutting property-owners, but in the case at bar the facts do not bring the use within the spirit of the rule. This doctrine of a reasonable

temporary obstruction of public streets by abutting property-owners has its origin in the law of necessity. In loading and unloading manufactured articles from a factory, a reasonable temporary obstruction of the public street may be necessary, but such obstruction must be both reasonable in kind and temporary in character. Building new buildings and repairing old ones may of necessity require the reasonable and temporary obstruction of streets. And it might be added that the reasonableness of the obstruction, as well as its temporary character, may vary with the facts of each case, and both may be questions for a jury. But under the facts in this case this pile of lumber was an unauthorized obstruction in a public street, and neither its reasonableness nor its character as to being temporary or otherwise, were questions for the jury, and therein this instruction was error .

We have set out this evidence at length. It shows (1) that Riechers & Son used the abutting property as a storage place for old building material, (2) that their storage room was full to overflowing and for that reason they used a public street as a storage room, and (3) that they proposed to so use such street as a storage room for the conduct of their business until such time as the congested condition within their yards was relieved. This testimony does not show a temporary use within the rule established by the case upon which the defendants rely. Had they shown that the lumber was temporarily thrown in the street at the gateway of their yard, until such time as it could be carried in and then stored, we might have a different question. If a merchant receives a car load of plows, and makes a reasonable use of the sidewalk until such time as by the use of due diligence (and the situation demanded the use of the sidewalk) he could have them taken away and placed in his storage room or yards, such use might be said to fall within the rule stated in the Gerdes case, supra; but, if such merchant

deliberately stored his car load of plows upon the sidewalk, until such time as in the course of his business, he could reduce his stock, so as to have room to store them upon his own premises, such case would not fall within the rule of a reasonable temporary use. Whilst such a use might not last long, yet the facts would make it in law a permanent and unlawful use. The case at bar falls within this latter class. Under defendants' testimony, this lumber was being stored there until such time as they could use sufficient material from within to leave a place for its storage at this later date. Such an obstruction to a public highway is neither reasonable nor temporary and should be so declared as a matter of law. This modified instruction given by the court does not declare the law under the facts of this case, and for this error the judgment *nisi* must be reversed and the cause remanded.

II.   Going now to the instruction asked by the plaintiff, supra, it must be said that it too is not without some fault. With the view we have expressed in paragraph one, notice to the Riechers was not required. They were the authors of an unauthorized obstruction, and an obstruction dangerous (under plaintiffs' evidence) to children who might be lawfully using the street whilst at play. But the city of St. Louis is a defendant, and notice to it was essential to its liability. In this instruction is the clause "and that they allowed it to remain there for about three days," and it may be that this would make the instruction misleading. It might be construed that the court was saying that "about three days" was in law the reasonable notice to which the city was entitled before liability would attach. The clause is awkwardly used, and in redrafting can be left out or

*Storing Lumber in Street: Notice to City.*

changed as herein suggested. Otherwise this instruction properly declares the law.

III. Instruction numbered 5 for the defendants is erroneous for the same reasons given in our paragraph one, and perhaps for others. In fact there are numerous errors throughout the long list of instructions, but they mostly arise from the erroneous view taken by the trial court, as disclosed in our paragraph one—and for that reason need not be noticed in detail. The plaintiff's evidence is such as to justify the submission of his case both as to the city and the two individual defendants, and under proper instructions the jury may take a different view of the matter. Let the judgment be reversed and the cause remanded to be tried according to the views herein expressed. All concur.